No. 2024-1061

# United States Court of Appeals
# for the Federal Circuit

———————

ALLERGAN USA, INC., ALLERGAN HOLDINGS UNLIMITED CO.,
ALLERGAN PHARMACEUTICALS INTERNATIONAL LTD.,
JANSSEN PHARMACEUTICA NV,
EDEN BIODESIGN, LLC,
PLAINTIFFS-APPELLANTS

*v.*

MSN LABORATORIES PRIVATE LTD.,
MSN PHARMACEUTICALS, INC.,
SUN PHARMACEUTICAL INDUSTRIES LIMITED,
DEFENDANTS-APPELLEES

———————

*APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF DELAWARE, CASE NOS. 1:19-CV-01727-RGA, 1:21-CV-01064-RGA,
1:21-CV-01065-RGA, 1:20-CV-01479-RGA, JUDGE RICHARD G. ANDREWS*

———————

## BRIEF FOR DEFENDANT-APPELLEE
## SUN PHARMACEUTICAL INDUSTRIES LIMITED

———————

EIMERIC REIG-PLESSIS
Winston & Strawn LLP
101 California Street
San Francisco, CA 94111
(415) 591-1000
ereigplessis@winston.com

January 29, 2024

CHARLES B. KLEIN
JOVIAL WONG
Winston & Strawn LLP
1901 L Street NW
Washington, DC 20036
(202) 282-5000
cklein@winston.com
jwong@winston.com

*Counsel for Defendant-Appellee Sun Pharmaceutical Industries Limited*

**Claim 40 of U.S. Patent No. 7,741,356 (Appx14483-14484)**

**40.** A compound selected from the group consisting of

**Claim 7 of U.S. Patent No. 11,007,179 (Appx96-97)**

**1.** An abuse-deterrent, mono-phasic pharmaceutical tablet comprising:

about 75 mg of 5-({[(2S)-2-Amino-3-(4-carbamoyl-2,6-dimethyl-phenyl)-propionyl]-[(1S)-1-(4-phenyl-1H-imidazol-2-yl)-ethyl]-amino}-methyl)-2-methoxy-benzoic acid,

about 60-80% by weight silicified microcrystalline cellulose;

crospovidone;

about 5-15% by weight mannitol; and

optionally, a glidant and/or lubricant.

**3.** The tablet of claim **1,** comprising about 65-75% by weight silicified microcrystalline cellulose, and about 7.5-12.5% by weight mannitol.

**4.** The tablet of claim **3,** comprising about 3-7% by weight crospovidone and a lubricant.

**5.** The tablet of claim **4,** wherein the lubricant is magnesium stearate present in an amount of about 0.55-0.95% by weight.

**6.** The tablet of claim **5,** comprising:

about 75 mg of 5-({[(2S)-2-Amino-3-(4-carbamoyl-2,6-dimethyl-phenyl)-propinyl]-[(1S)-1-(4-phenyl-1H-imidazol-2-yl)-ethyl]-amino}-methyl)-2-methoxy-benzoic acid;

about 390 mg-450 mg of silicified microcrystalline cellulose;

about 18 mg-42 mg crospovidone;

about 45 mg-75 mg of mannitol; and

about 3.3 mg-5.7 mg of magnesium stearate.

**7.** The tablet of claim **6,** comprising:

about 75 mg of 5-({[(2S)-2-Amino-3-(4-carbamoyl-2,6-dimethyl-phenyl)-propinyl]-[(1S)-1-(4-phenyl-1H-imidazol-2-yl)-ethyl]-amino}-methyl)-2-methoxy-benzoic acid;

about 390 mg-450 mg of silicified microcrystalline cellulose;

about 30 mg of crospovidone;

about 60 mg of mannitol; and

about 4.5 mg of magnesium stearate.

## Claim 26 of U.S. Patent No. 11,311,516 (Appx205-206)

**1.** A pharmaceutical tablet comprising:

about 75 mg of 5-({[(2S)-2-Amino-3-(4-carbamoyl-2,6-dimethyl-phenyl)-propinyl]-[(1S)-1-(4-phenyl-1H-imidazol-2-yl)-ethyl]-amino}-methyl)-2-methoxy-benzoic acid,

about 60-80% by weight filler;

about 2-8% by weight disintegrant; and

about 10% by weight mannitol.

**26.** The pharmaceutical tablet of claim **1,** comprising:

about 75 mg of 5-({[(2S)-2-Amino-3-(4-carbamoyl-2,6-dimethyl-phenyl)-propionyl]-[(1S)-1-(4-phenyl-1H-imidazol-2-yl)-ethyl]-amino}-methyl)-2-methoxy-benzoic acid;

about 390 mg-450 mg silicified microcrystalline cellulose;

about 30 mg crospovidone;

about 60 mg mannitol;

about 4.5 mg magnesium stearate; and

about 18 mg of a film coating,

wherein the nominal weight of the tablet without the film coating is about 600 mg and the total weight of the tablet is about 618 mg.

# CERTIFICATE OF INTEREST

Counsel for Defendant-Appellee Sun Pharmaceutical Industries Limited

certifies the following:

1.  **Represented Entities.** Fed. Cir. R. 47.4(a)(1): "The full name of every entity represented in the case by the counsel filing the certificate."

    Sun Pharmaceutical Industries Limited

2.  **Real Party in Interest.** Fed. Cir. R. 47.4(a)(2): "For each entity, the name of every real party in interest, if that entity is not the real party in interest."

    N/A

3.  **Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3): "For each entity, that entity's parent corporation(s) and every publicly held corporation that owns ten percent (10%) or more of its stock."

    N/A

4.  **Legal Representatives.** Fed. Cir. R. 47.4(a)(4): "The names of all law firms, partners, and associates that have not entered an appearance in the appeal, and (A) appeared for the entity in the lower tribunal; or (B) are expected to appear for the entity in this court."

    *Winston & Strawn LLP*: Kevin J. Boyle; Annie R. Steiner

    *Heyman Enerio Gattuso & Hirzel LLP*: Dominick T. Gattuso

5.  **Related Cases.** Fed. Cir. R. 47.4(a)(5): "An indication as to whether there are any related or prior cases, other than the originating case number(s), that meet the criteria under Federal Circuit Rule 47.5."

    No.

6.  **Organizational Victims and Bankruptcy Cases.** Fed. Cir. R. 47.4(a)(6): "All information required by Federal Rule of Appellate

Procedure 26.1(b) and (c) that identifies organizational victims in criminal cases and debtors and trustees in bankruptcy cases."

N/A

Dated January 29, 2024

/s/ Charles B. Klein
CHARLES B. KLEIN
Winston & Strawn LLP
1901 L Street NW
Washington, DC 20036
(202) 282-5000
cklein@winston.com

# TABLE OF CONTENTS

Page

GLOSSARY OF ABBREVIATIONS ....................................................... ix

STATEMENT OF RELATED CASES .................................................... x

INTRODUCTION ................................................................................... 1

STATEMENT OF ISSUES ..................................................................... 5

STATEMENT OF THE CASE ................................................................ 6

    A.    Multiple patents with different expiration dates claim eluxadoline......6

    B.    Allergan originally asserted formulation patents whose claims required a glidant, consistent with their limited disclosure. ................7

    C.    After claim construction, Allergan sought and obtained broader, glidant-optional claims to cover Sun's product.....................................9

    D.    The district court found all asserted claims invalid. ...........................10

SUMMARY OF ARGUMENT..................................................................11

ARGUMENT ...........................................................................................14

I.    The district court correctly found the sole asserted claim of the '356 patent invalid for ODP. .....................................................................14

    A.    A patentee cannot have two patents with patentably indistinct claims that expire on different dates, regardless of when the patents were filed or issued. ...............................................................15

        1.    ODP protects the public's right to use a claimed invention and its obvious variants after a patent expires. .........................15

        2.    Before the URAA, ODP was based on comparing issue dates (because they dictated expiration), but *not* filing dates. ...........16

        3.    Under *Gilead* and *AbbVie*, only *expiration* dates are relevant to evaluating ODP between two post-URAA patents...............18

        4.    *Breckenridge* and *Ezra* define the only two narrow exceptions to basing ODP on expiration dates. .........................19

# TABLE OF CONTENTS (continued)

Page

B.    *In re Cellect* confirms that an earlier-filed, earlier-issued patent that expires later because of PTA can be invalidated for ODP over a later-filed, later-issuing patent that did not receive PTA.................21

    1.    The Patent Office expressly found that an earlier-filed, earlier-issued patent could be invalid for ODP........................22

    2.    This Court affirmed the Patent Office's decision and rejected the patentee's statutory and equitable arguments. ....................25

C.    The district court properly found ODP by applying this Court's precedent to undisputed facts. ...........................................27

    1.    Allergan's reliance on filing and issuance dates fails under this Court's case law, which focuses on *expiration* dates.........28

    2.    Allergan's statutory arguments lack merit and contradict this Court's precedent. ....................................................33

    3.    Allergan's equitable arguments lack merit and, regardless, ODP would be proper even under a two-way test. ..................35

II.    Allergan fails to show clear error in the district court's findings that the '516 and '179 patents' representative claims lack written description...................................................................................37

A.    The written-description requirement prevents patentees from drafting overbroad claims to cover what they did not invent. ............38

B.    The record amply supports the district court's factual findings that the representative claims lack written description. .............................40

    1.    Claim 26 is "glidant-optional" because it does not require a glidant and thus covers formulations without a glidant............41

    2.    The district court properly relied on expert testimony about how a POSA would understand the specification.....................45

    3.    The district court properly applied the burden of proof. ..........50

    4.    The district court properly analyzed possession as a question of written description, not enablement. ....................................51

**TABLE OF CONTENTS (continued)**

Page

       5.      Allergan fails to show any clear factual error. ..........................52

           a.      The "Summary of Disclosure" does not provide written-description support...........................................53

           b.      The "preformulation" disclosure does not provide written-description support...........................................55

           c.      The original claims do not provide written-description support. ......................................................57

III.   Multiple alternative grounds support the district court's judgment on the formulation patents. ...................................................................58

   A.    The judgment is independently supported by the inventor's testimony that he did not invent a glidant-free formulation. ..............58

   B.    The judgment is independently supported by unclean hands. ............60

   C.    The district court did not consider Sun's obviousness defense...........62

CONCLUSION ....................................................................................................62

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*AbbVie Inc. v. Mathilda & Terence Kennedy Inst. of Rheumatology Tr.*,
764 F.3d 1366 (Fed. Cir. 2014) ........................................15, 18–19, 28

*Acadia Pharms. Inc. v. Aurobindo Pharma Ltd.*,
No. 20-985-GBW, 2023 WL 8622048 (D. Del. Dec. 13, 2023) .......................32

*Ariad Pharm., Inc. v. Eli Lilly & Co.*,
598 F.3d 1336 (Fed. Cir. 2010) ........................................ 3–5, 38, 52–53, 57, 59

*Aventis Pharma Deutschland GmbH v. Lupin, Ltd.*,
499 F.3d 1293 (Fed. Cir. 2007) ...................................................45, 57

*In re Berg*,
140 F.3d 1428 (Fed. Cir. 1998) ...................................................17, 37

*Biogen Int'l GMBH v. Mylan Pharms. Inc.*,
18 F.4th 1333 (Fed. Cir. 2021) .................................................3, 45, 53

*Boehringer Ingelheim Int'l GmbH v. Barr Labs., Inc.*,
592 F.3d 1340 (Fed. Cir. 2010) ...................................................16, 30

*In re Braat*,
937 F.2d 589 (Fed. Cir. 1991) ...................................................36–37

*Ex parte Cellect*,
Appeal 2021-005302, 2021 WL 5755327 (PTAB Dec. 1, 2021)...........22–24, 29

*In re Cellect*,
81 F.4th 1216 (Fed. Cir. 2023) ........................... 3, 10–12, 21–22, 25–32, 34–35

*In re Cellect*,
No. 22-1293, Dkt. 182 (Fed. Cir. Jan. 19, 2024)................................27

*Chiron Corp. v. Genentech, Inc.*,
363 F.3d 1247 (Fed. Cir. 2004) ...................................................59

# TABLE OF AUTHORITIES (continued)

**Page(s)**

*Cooper Cameron Corp. v. Kvaerner Oilfield Prods., Inc.*,
    291 F.3d 1317 (Fed. Cir. 2002) ...........................................................48

*Fiers v. Revel*,
    984 F.2d 1164 (Fed. Cir. 1993) ...........................................................59

*Gilead Scis., Inc. v. Natco Pharma Ltd.*,
    753 F.3d 1208 (Fed. Cir. 2014) ................. 1–2, 11, 15–16, 18–21, 27–29, 32, 35

*In re Goodman*,
    11 F.3d 1046 (Fed. Cir. 1993) ...........................................................17

*Green Edge Enters., LLC v. Rubber Mulch Etc., LLC*,
    620 F.3d 1287 (Fed. Cir. 2010) ...........................................................62

*In re Griswold*,
    365 F.2d 834 (CCPA 1966) ...............................................................17

*ICU Med., Inc. v. Alaris Med. Sys., Inc.*,
    558 F.3d 1368 (Fed. Cir. 2009) ................................. 4, 13, 39, 42, 46, 50, 52, 56

*Ignite USA, LLC v. CamelBak Prods., LLC*,
    709 F. App'x 1010 (Fed. Cir. 2017) ...................................................50

*Immunex Corp. v. Sandoz Inc.*,
    964 F.3d 1049 (Fed. Cir. 2020) ...........................................................45

*ISCO Int'l, Inc. v. Conductus, Inc.*,
    123 F. App'x 974 (Fed. Cir. 2005) .....................................................51

*In re Janssen Biotech, Inc.*,
    880 F.3d 1315 (Fed. Cir. 2018) ...........................................................17

*Juno Therapeutics, Inc. v. Kite Pharma, Inc.*,
    10 F.4th 1330 (Fed. Cir. 2021) ......................................................38–39

*Kao Corp. v. Unilever U.S., Inc.*,
    441 F.3d 963 (Fed. Cir. 2006) ...........................................................53

# TABLE OF AUTHORITIES (continued)

**Page(s)**

*Keystone Driller Co. v. Gen. Excavator Co.*,
  290 U.S. 240 (1933)....................................................................60

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
  481 F.3d 1371 (Fed. Cir. 2007) ................................................49

*LizardTech, Inc. v. Earth Resource Mapping, Inc.*,
  424 F.3d 1336 (Fed. Cir. 2005) ................................................57

*In re Longi*,
  759 F.2d 887 (Fed. Cir. 1985) ..................................................15

*MEHL/Biophile Int'l Corp. v. Milgraum*,
  192 F.3d 1362 (Fed. Cir. 1999) ................................................58

*Merck Sharp & Dohme Corp. v. Hospira, Inc.*,
  874 F.3d 724 (Fed. Cir. 2017) ..................................................53

*Miller v. Eagle Mfg. Co.*,
  151 U.S. 186 (1894).....................................................................17

*New Railhead Mfg., L.L.C. v. Vermeer Mfg. Co.*,
  298 F.3d 1290 (Fed. Cir. 2002) ................................................59

*Novartis AG v. Ezra Ventures LLC*,
  909 F.3d 1367 (Fed. Cir. 2018) ................................19–21, 24

*Novartis Pharms. Corp. v. Breckenridge Pharm. Inc.*,
  909 F.3d 1355 (Fed. Cir. 2018) ...................... 2–3, 19–21, 23–24, 33

*Nuvo Pharms. (Ireland) Designated Activity Co. v. Dr. Reddy's Labs.*
  *Inc.*,
  923 F.3d 1368 (Fed. Cir. 2019) ..........................................52, 59

*Pentec, Inc. v. Graphic Controls Corp.*,
  776 F.2d 309 (Fed. Cir. 1985) ..................................................51

*In re Peters*,
  723 F.2d 891 (Fed. Cir. 1983) ..................................................47

# TABLE OF AUTHORITIES (continued)

**Page(s)**

*Polaroid Corp. v. Eastman Kodak Co.*,
  789 F.2d 1556 (Fed. Cir. 1986) ...........................................................53

*Purdue Pharma L.P. v. Faulding Inc.*,
  230 F.3d 1320 (Fed. Cir. 2000) ...................................................44, 55

*Qualcomm Inc. v. Broadcom Corp.*,
  548 F.3d 1004 (Fed. Cir. 2008) ...........................................................58

*SmithKline Beecham Corp. v. Apotex Corp.*,
  439 F.3d 1312 (Fed. Cir. 2006) ...........................................................43

*Tronzo v. Biomet, Inc.*,
  156 F.3d 1154 (Fed. Cir. 1998) ...................................................46–47

*TypeRight Keyboard Corp. v. Microsoft Corp.*,
  374 F.3d 1151 (Fed. Cir. 2004) ...........................................................58

**Statutes**

35 U.S.C. § 101 ......................................................................11, 15, 35

35 U.S.C. § 102(c) ...............................................................................34

35 U.S.C. § 112 ..................................................................1, 38, 44, 49

35 U.S.C. § 120 ............................................................................34–35

35 U.S.C. § 121 ....................................................................................32

35 U.S.C. § 154 ......................................................20, 24, 26, 35

35 U.S.C. § 154(a)(2) ...............................................................16, 33

35 U.S.C. § 154(b) ..................................... 3, 6, 10, 12, 19, 21, 34

35 U.S.C. § 154(b)(1)(A)-(C) ...........................................................34

35 U.S.C. § 154(b)(2)(B) .........................................20, 24, 27, 34

35 U.S.C. § 154(c)(1).........................................................................19

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

35 U.S.C. § 156...................................................................20–21, 24, 26

35 U.S.C. § 253(b) ........................................................................16

**Other Authorities**

Fed R. Civ. P. 8(c)........................................................................61

# GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| '011 patent | U.S. Patent No. 8,344,011 |
| '036 patent | U.S. Patent No. 6,862,036 |
| '179 patent | U.S. Patent No. 11,007,179 (Appx73-101) |
| '356 patent | U.S. Patent No. 7,741,356 (Appx14407-14485) |
| '516 patent | U.S. Patent No. 11,311,516 (Appx183-209) |
| '587 patent | U.S. Patent No. 9,675,587 (Appx210-231) |
| '626 patent | U.S. Patent No. 6,452,626 |
| '632 patent | U.S. Patent No. 10,188,632 (Appx48-72) |
| '709 patent | U.S. Patent No. 8,609,709 |
| Allergan | Plaintiffs-Appellants Allergan USA, Inc., Allergan Holdings Unlimited Co., Allergan Pharmaceuticals International Ltd., Janssen Pharmaceutica NV, and Eden Biodesign, LLC |
| ANDA | abbreviated new drug application |
| ODP | obviousness-type double patenting |
| POSA | person of ordinary skill in the art |
| PTA | patent term adjustment under 35 U.S.C. § 154(b) |
| PTE | patent term extension under 35 U.S.C. § 156 |
| PTO | U.S. Patent and Trademark Office |
| SMCC | silicified microcrystalline cellulose |
| Sun | Defendant-Appellee Sun Pharmaceutical Industries Limited |
| URAA | Uruguay Rounds Agreement Act |

## STATEMENT OF RELATED CASES

No other appeal has been taken in this case, and counsel for Sun is not aware of any other case pending in any court or agency that will directly affect, or be directly affected by, this Court's decision in this appeal.

## INTRODUCTION

Allergan's brief fails to show reversible error.  There are five patents on

appeal: U.S. Patent No. 7,741,356 (the "'356 patent") covers the compound

eluxadoline.  The remaining four patents cover formulated tablets of eluxadoline,

which the parties agree are represented by claims in U.S. Patent Nos. 11,007,179

(the "'179 patent") and 11,311,516 (the "'516 patent").  For the '356 patent, the

district court applied this Court's precedent to the undisputed facts to find the sole

asserted claim invalid for obviousness-type double patenting ("ODP").  For the

remaining patents, the district court found, as a factual matter, that the specification

fails to provide written-description support for the asserted claims under 35 U.S.C.

§ 112.  Allergan provides no basis to disturb the judgment.

***Double patenting.***  It is undisputed that (1) the '356 patent expires later than

two commonly owned patents due to a patent term adjustment ("PTA"); and (2)

certain claims in those earlier-expiring patents and claim 40 of the '356 patent "are

not patentably distinct from each other."  Appx44-45.  These undisputed facts

present a textbook case of ODP, which embodies "a bedrock principle of our

patent system that when a patent expires, the public is free to use not only the same

invention claimed in the expired patent but also obvious or patentably indistinct

modifications of that invention."  *Gilead Scis., Inc. v. Natco Pharma Ltd.*, 753 F.3d

1208, 1214 (Fed. Cir. 2014).  "[T]hat principle is violated when a patent expires

and the public is nevertheless barred from practicing obvious modifications of the invention claimed in that patent because the inventor holds another later-expiring patent with claims for obvious modifications of the invention." *Id*.

Allergan's efforts to avoid that result lack merit. Allergan argues the '356 patent is immune from ODP as the "first-filed, first-issued patent" in its family, which purportedly "cannot *extend* the term of *later-filed, later-issued* continuation patents." Br. 1. But that argument fails under this Court's caselaw, including *Gilead*. There, this Court rejected the argument that an earlier-issued patent "in no way extends the term of the exclusivity for" a later-issued reference patent. 753 F.3d at 1214. As this Court held, it is of "little import" that a challenged patent "issues first" where, as here, it "does not expire first." *Id*. at 1214-15. The only "date that really matter[s]" is "patent expiration"—not filing or issue dates—so "patent expiration dates [] should control" whether patents qualify as ODP references. 753 F.3d at 1215.

Allergan relies heavily on the unique situation in *Novartis Pharmaceuticals Corp. v. Breckenridge Pharmaceutical Inc.*, 909 F.3d 1355 (Fed. Cir. 2018), where this Court held that a patent filed after an "intervening change in law by Congress defining a patent's term" in 1994 could not invalidate a patent filed before the law changed, which would conflict with a specific "transition statute" that guaranteed applicants "the greater of" two possible terms during the transitional period. *Id*. at

2

1357, 1366.  That holding is irrelevant here, where there is no intervening change in law that precludes ODP.  This Court "limit[ed] [its] opinion [in *Breckenridge*] to the specific facts of th[at] case" (*id*. at 1366 n.3), and Allergan cannot broaden its holding to avoid ODP here.

This case is analogous to *In re Cellect*, 81 F.4th 1216 (Fed. Cir. 2023), where this Court relied on a later-filed, later-issued continuation patent to invalidate an earlier-filed, earlier-issued patent expiring later due to PTA under 35 U.S.C. § 154(b), which is the same reason the '356 patent expires later than the ODP reference patents here.  *Id*. at 1220, 1229; Appx44-45.  The district court correctly found that *In re Cellect* is dispositive and forecloses Allergan's statutory and "equitable" arguments.  Appx45-46.

***Written description.***  As to the formulation patents, "[w]hether a claim meets the written-description requirement is a question of fact, which this court reviews for clear error"—a standard that "requires courts to exercise deference." *Biogen Int'l GMBH v. Mylan Pharms. Inc.*, 18 F.4th 1333, 1340-41 (Fed. Cir. 2021).  "[T]he purpose of the written description requirement is to ensure that the scope of the right to exclude, as set forth in the claims, does not overreach the scope of the inventor's contribution to the field of art as described in the patent specification." *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1353-54 (Fed. Cir. 2010) (quotation omitted).  The claims here represent classic overreach.

3

In its original complaint, Allergan asserted older, related patents with claims limited to formulations requiring a specific glidant, colloidal silica. Appx301; Appx230-231; Appx70. The district court construed this glidant to be "distinct from" another recited ingredient. Appx2322-2323. Under that construction (which Allergan did not appeal), Sun's accused product could not infringe—Allergan thus dismissed the originally asserted patents on the eve of trial. Appx4797. After claim construction, however, Allergan prosecuted new and amended claims in continuation applications that either removed or made optional the claimed glidant, *broadening* their scope to cover formulations (like Sun's) *without* a glidant. Appx9223; Appx11593. Those applications became the '516 and '179 patents.

But the named inventor never invented—and thus never described—eluxadoline formulations *without* a glidant. This Court's holding in *ICU Medical, Inc. v. Alaris Medical Systems, Inc.* is on point. There, as here, the plaintiff initially obtained claims with a specific limitation—a "spike"—that the defendant did not infringe. 558 F.3d 1368, 1374-76, 1380 (Fed. Cir. 2009). The plaintiff filed continuation applications that omitted the "spike" limitation, resulting in "spikeless (or spike-optional) claims." *Id*. at 1372, 1377. The "spikeless claims [we]re broader than the [original] spike claims" because they covered devices "that operate with a spike and those that operate without a spike." *Id*. at 1378. "But the

specification describe[d] only medical valves with spikes." *Id*. Because "a person of skill in the art [('POSA')] would not understand the inventor … to have invented a spikeless medical valve," the claims were invalid. *Id*.

This case is no different. The district court found, as a factual matter, that "[t]he patent specification does not disclose that the patentee possessed a formulation of eluxadoline that either lacks a glidant or signaled to a POSA that the inclusion of a glidant in those formulations is optional." Appx17. "Just as spikeless claims in *ICU Med*[*ical*] lacked adequate written description because the specification failed to disclose a spikeless valve, the asserted claims here lack written description because the specification fails to disclose a formulation that does not have a glidant or where a glidant would be understood as optional." Appx17-18. As discussed below, the specification amply supports these factual findings, which are not clearly erroneous.

Even if Allergan could show any harmful error (it cannot), the judgment is supported by alternative grounds for affirmance, or at least remand—Allergan has unclean hands in asserting litigation-inspired, glidant-optional claims that the inventor admitted he never invented, and the claims are invalid as obvious.

## STATEMENT OF ISSUES

I.    Whether Allergan has shown reversible error in the district court's finding that claim 40 of the '356 patent is invalid for ODP.

**II.**     Whether Allergan has shown clear and reversible error in the district court's factual findings that representative claim 26 of the '516 patent and representative claim 7 of the '179 patent lack written description.

**III.**     Alternatively, whether the judgment on the formulation patents is supported by (1) the inventor's admissions that he did not invent the claimed subject matter; (2) Allergan's unclean hands in obtaining and asserting these patents; or (3) obviousness (which would require a remand).

## STATEMENT OF THE CASE

### A.     Multiple patents with different expiration dates claim eluxadoline.

Asserted claim 40 of the '356 patent covers eluxadoline.  Appx45.  The '356 patent is commonly owned with two unasserted patents that also cover eluxadoline: Claim 33 of U.S. Patent No. 8,344,011 (the "'011 patent") covers a method of administering eluxadoline, and claim 5 of U.S. Patent No. 8,609,709 (the "'709 patent") covers eluxadoline.  Appx44-45.  The district court found, and the parties do not dispute, that these claims are patentably indistinct.  Appx45.

The '356 patent received 467 days of PTA under 35 U.S.C. § 154(b), but the '011 and '709 patents received no PTA.  Appx44.  Thus, after adding PTA, the '356 patent expires after the '011 and '709 patents.  *Id*.

**B.    Allergan originally asserted formulation patents whose claims required a glidant, consistent with their limited disclosure.**

In addition to the '356 patent, Allergan asserted four patents at trial claiming eluxadoline tablet formulations.  These related patents share a specification: the '179 and '516 patents, and U.S. Patent Nos. 11,090,291 and 11,160,792.  Appx7.

When Allergan filed this case against Sun, the formulation patents Allergan would eventually assert at trial did not yet exist.  Instead, Allergan's original complaint asserted two earlier patents in the same family: U.S. Patent Nos. 9,675,587 (the "'587 patent") and 10,188,632 (the "'632 patent").  Appx301. All claims of these patents required a specific glidant, colloidal silica (sometimes called colloidal silicon dioxide).  Appx230-231; Appx70.

These originally asserted claims were commensurate in scope with the patents' specification, which is also shared by the '179 and '516 patents Allergan asserted at trial.  The specification acknowledges that eluxadoline and its use to treat irritable bowel syndrome were known.  Appx53 (2:34-47).  But "different formulations" of eluxadoline "may have very different … properties."  *Id*. (1:41-50).  The inventors allegedly "discovered solid oral pharmaceutical formulation[s]" with "unique" abuse-deterrent properties.  Appx54.  Allergan's expert, Dr. Berkland, testified that "[t]he only eluxadoline formulations disclosed in the patents" are "a narrow group" of formulations comprising a "unique combination

of ingredients in specific amounts," with "monophasic, immediate release, and abuse-deterrent" properties.  Appx6136-6137 (421:1-422:22).

The disclosed formulations "always ha[ve] the exact same five very specific excipients that include … colloidal silica."  Appx5857 (142:3-9) (Gemeinhart). These formulations are recited in Table 1 and expressly include colloidal silica as a "[g]lidant."  Appx86 (16:30-55).  The process steps for making them, disclosed in Figure 1, require colloidal silica.  Appx77; Appx5838 (123:11-22) (Gemeinhart). And the only data to show the inventors achieved abuse-deterrent properties are from testing the Table 1 formulations with colloidal silica.  Appx87 (18:52-53); Appx5855 (140:18-24) (Gemeinhart).  Although "[t]he formulations can also optionally include" other ingredients, a glidant is not listed as "optional[]." Appx84 (12:38-51); Appx5833-5835 (118:12-120:2) (Gemeinhart).

The only named inventor Allergan made available, Dr. Costello, was not "aware of any eluxadoline formulations that [he] invented but are not included in the claims of the '587 patent," which required colloidal silica.  Appx5797-5798 (82:22-83:3).  Any formulations he made without the specific ingredients in Table 1 were "unsuccessful," and he could not recall making any formulations without a glidant (i.e., colloidal silica).  Appx5798-5799 (83:17-84:13).  Dr. Costello "didn't test any other[]" formulations besides the Table 1 formulations with a glidant

8

(Appx5779 (64:10-14)), and he found it "pretty unlikely" that one could predict

how formulations would perform without testing (Appx5775 (61:5-9)).

### C. After claim construction, Allergan sought and obtained broader, glidant-optional claims to cover Sun's product.

Allergan could not prove infringement of the originally asserted claims

because Sun's accused eluxadoline product lacks colloidal silica, or any other

glidant.  Appx3754; Appx5755 (40:10-13).  Allergan tried to argue that another

formulation ingredient—silicified microcrystalline cellulose ("SMCC")—satisfied

the colloidal silica limitation.  Appx2322.  But the district court construed

"colloidal silica" as an ingredient "distinct from" SMCC.  Appx2322-2323.  This

left Allergan with no viable infringement theory for the originally asserted claims.

Appx4797.

Allergan thus changed tactics by prosecuting broader claims in the same

patent family to cover Sun's accused product.  In March 2021, two months after

the district court's claim construction—but eight years after filing the priority

application in 2013—Allergan amended the claims of a pending continuation

application to remove the limitation "colloidal silicon dioxide" and add the

limitation "optionally, a glidant":

1.   (**Currently Amended**) An abuse-deterrent, mono-phasic pharmaceutical tablet comprising:

   about 75 mg of 5-({[(2S)-2-Amino-3-(4-carbamoyl-2,6-dimethyl-phenyl)-propionyl]-[(1S)-

   1-(4-phenyl-1H-imidazol-2-yl)-ethyl]-amino}-methyl)-2-methoxy-benzoic acid,

   about 60-80% by weight silicified microcrystalline cellulose[[,]];

   colloidal silicon dioxide,

   crospovidone[[,]];

   about 5-15% by weight mannitol[[,]]; and magnesium stearate

   optionally, a glidant and/or lubricant.

Appx9223.  This application issued as the '179 patent.  Appx73.

Allergan never told the inventor, Dr. Costello, that it was broadening its claims—their last communications were in 2018, before Allergan filed suit. Appx5800-5801 (85:20-86:8) (Costello).  Even after Dr. Costello's deposition, which Allergan did not disclose to the PTO, Allergan continued prosecuting new patents that do not require a glidant, including the '516 patent.  Appx183.

### D.   The district court found all asserted claims invalid.

After a three-day bench trial, the district court held the asserted claims invalid.  It was undisputed that asserted claim 40 of the '356 patent and the reference claims of the '011 and '709 patents "are not patentably distinct from each other."  Appx45.  The parties' post-trial briefing, which occurred before this Court's decision in *In re Cellect*, focused on whether the '356 patent was subject to ODP given that its later expiration resulted from PTA under § 154(b). Appx15657-15659; Appx16144; Appx16211.  After this Court's decision in *In re Cellect*, the parties submitted a joint status report regarding its impact.

Appx16228; Appx16233-16234.  The district court then issued its opinion

invalidating claim 40, finding *In re Cellect* and *Gilead* dispositive.  Appx44-46.

As to the formulation patents, the parties stipulated that claim 26 of the '516

patent and claim 7 of the '179 patent were representative.  Appx9.  The district

court found that these claims, which broadly cover formulations without a glidant,

lack written description.  Appx16-26.  Citing both sides' experts, the court found

"[n]one of the formulations disclosed in the patent specification of the asserted

patents are made without a glidant," and "[a] POSA reading the patent

specification would not have understood the patentee to possess a formulation of

eluxadoline in which a glidant is optional."  Appx16.

Alternatively, Sun argued that the asserted formulation claims are invalid as

obvious, but the district court did not reach this defense.  Appx44.

## SUMMARY OF ARGUMENT

**I.**     ODP is grounded in the Patent Act, which limits applicants to "a

patent"—just one—per invention.  35 U.S.C. § 101.  Here, the same patentee holds

*multiple* patents claiming patentably indistinct inventions that expire on different

dates, presenting a classic case of ODP.  Allergan's main argument—that the first-

filed, first-issued patent in a family is exempt from ODP—fails under binding

precedent holding that *expiration* dates control ODP, not filing or issue dates.

*Gilead*, 753 F.3d at 1215; *Cellect*, 81 F.4th at 1226.

That the '356 patent expires later because of PTA—a statutory adjustment—does not change the result.  There is no dispute that claim 40 of the '356 is patentably indistinct from the reference claims of the '011 and '709 patents.  Exempting the '356 patent from ODP merely because it received PTA "would, in effect, confer on the reference claims of the [earlier-expiring] patent[s] PTA to which they were not entitled." *In re Cellect*, 81 F.4th at 1230.  This Court has rejected Allergan's argument that a "statutorily mandated" term "cannot be cut short" by ODP.  *Id*. at 1227.  *Every* patent term is mandated by statute.  That PTA is subject to terminal disclaimers under § 154(b) "is tantamount to a statutory acknowledgement that ODP concerns can arise when PTA results in a later-expiring claim that is patentably indistinct." *Id*. at 1228.

Allergan cannot avoid this result by arguing it "did not engage in gamesmanship." *Id*. at 1230.  "[G]ood faith during prosecution does not entitle [a patentee] to a patent term to which it otherwise is not entitled," even if it "did not engage in gamesmanship in obtaining a grant of PTA." *Id*.  Allergan's equitable arguments fail for this reason and others discussed below.

**II.**     Allergan fails to show clear error in the district court's factual findings that the asserted formulation claims, represented by the '516 and '179 patents, lack written description.  This case is like *ICU Medical*, where "the specification describe[d] only medical valves with spikes," and a POSA "would

not understand the inventor … to have invented spikeless medical valve." 558 F.3d at 1378. Similarly, the claims here "lack written description because the specification fails to disclose a formulation that does not have a glidant or where a glidant would be understood as optional." Appx17-18.

Contrary to Allergan's arguments (Br. 47-51), this finding does not import a "glidant-optional" limitation into the '516 patent. The district court used the word "optional" in the same way as this Court in *ICU Medical*, which called the claims "spikeless (or spike-optional)" "not because they exclude … a spike but rather because these claims do not include a spike limitation—i.e., they do not require a spike." 558 F.3d at 1372-73, 1377. Likewise, here, the '516 patent does not include a glidant limitation. Thus, it broadly covers formulations without a glidant, which the specification fails to describe.

The district court properly relied on expert testimony to determine how a POSA would understand the specification's consistent use of a glidant. Allergan's argument on appeal that the district court improperly relied on "extrinsic evidence" (Br. 51-55) is incorrect. It also contradicts Allergan's argument below, which stressed that it would have been "wrong" for the district court to disregard "extrinsic evidence" in the form of expert testimony, because the written description must be "judged from the perspective of one of ordinary skill in the

art" (Appx16116).  Indeed, Allergan relied extensively on extrinsic evidence.  *See id*.

**III.**    Even if Allergan could show any harmful error, multiple alternative grounds support the judgment on the formulation patents:

First, the inventor *admitted* he did not invent an eluxadoline formulation without a glidant, which is an independent basis to find that he lacked possession of—and thus could not describe—the claimed formulations.

Second, the inventor's admissions show that Allergan has unclean hands in prosecuting and asserting claims to cover Sun's glidant-free product, which Allergan knows the inventor never invented.

Third, any reversal on written description would require a remand to consider Sun's obviousness defense, which the district court did not reach.

## ARGUMENT

## I.    The district court correctly found the sole asserted claim of the '356 patent invalid for ODP.

This Court should affirm the judgment that claim 40 of the '356 patent is invalid for ODP because the material facts are undisputed, and the district court correctly applied this Court's precedent.  Allergan's arguments about filing and issue dates, the "statutory" nature of PTA, and the "equitable" nature of ODP retrace arguments this Court has already rejected.

A. **A patentee cannot have two patents with patentably indistinct claims that expire on different dates, regardless of when the patents were filed or issued.**

1. **ODP protects the public's right to use a claimed invention and its obvious variants after a patent expires.**

"While often described as a court-created doctrine, obviousness-type double patenting is grounded in the text of the Patent Act." *AbbVie Inc. v. Mathilda & Terence Kennedy Inst. of Rheumatology Tr.*, 764 F.3d 1366, 1372 (Fed. Cir. 2014). "Section 101 reads: 'Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, ... may obtain *a* patent therefor.'" *Id.* (quoting 35 U.S.C. § 101) (alteration original). "Thus, § 101 forbids an individual from obtaining more than one patent on the same invention, i.e., double patenting." *Id.* Although "a rejection based upon double patenting of the *obviousness* type"—i.e., ODP—is not "based purely on the precise terms of the statute," it is nevertheless "grounded in public policy … reflected in the patent statute." *In re Longi*, 759 F.2d 887, 892 (Fed. Cir. 1985).

"Federal courts for over a century have applied the principles of [ODP] as a means to preserve the public's right to use not only the exact invention claimed by an inventor when his patent expires, but also obvious modifications of that invention that are not patentably distinct improvements." *Gilead*, 753 F.3d at 1212. "The double patenting doctrine has always been implemented to effectively uphold that principle," which "is violated when a patent expires and the public is

15

nevertheless barred from practicing obvious modifications of the invention claimed in that patent because the inventor holds another later-expiring patent with claims for obvious modifications of the invention." *Id*. at 1214.

To avoid invalidity for ODP, a patentee must terminally disclaim the portion of the later-expiring patent term that extends beyond the earlier-expiring patent. *See* 35 U.S.C. § 253(b). This can occur any time before the reference patent expires, including "after issuance of the challenged patent or during litigation, even after a finding that the challenged patent is invalid for" ODP. *Boehringer Ingelheim Int'l GmbH v. Barr Labs., Inc.*, 592 F.3d 1340, 1347 (Fed. Cir. 2010).

### 2.    Before the URAA, ODP was based on comparing issue dates (because they dictated expiration), but *not* filing dates.

Ever since the 1994 Uruguay Rounds Agreement Act ("URAA"), the statutory patent term has been 20 years from its effective filing. *Gilead*, 753 F.3d at 1211; 35 U.S.C. § 154(a)(2). Before the URAA, however, the term was 17 years from *issuance*, so a patent's "expiration date was inextricably intertwined with the issuance date." *Gilead*, 753 F.3d at 1211, 1215. That is why cases often "describe the double patenting bar as applicable to the 'second' or 'later' issuing patent": Any later-expiring patent vulnerable to ODP was also, by definition, the "second" or "later" patent. *Id*. at 1214-15. Thus, pre-URAA, "looking to patent issue dates had previously served as a reliable stand-in for the date that really mattered— patent expiration." *Id*. at 1215.

Even pre-URAA, however, an earlier *filing* date did not preclude ODP. *E.g.*, *Miller v. Eagle Mfg. Co.*, 151 U.S. 186, 197 (1894) ("where two patents, showing the same invention or device, were issued to the same party, the later one was void, although the application for it was first filed"); *In re Griswold*, 365 F.2d 834, 1565-66, 1573 (CCPA 1966) (affirming rejections of earlier-filed applications over later-issued but earlier-expiring continuation applications).

At most, patentees could seek a more lenient standard for earlier-filed but later-expiring claims under ODP's "two-way" variant, which requires finding that both the challenged "claims are not patentably distinct from the prior patent claims, and the prior patent claims are also not patentably distinct from the [challenged] claims." *In re Goodman*, 11 F.3d 1046, 1053 (Fed. Cir. 1993). This "two-way test is a narrow exception … and is only appropriate where (1) a second-filed application issues prior to a first-filed application [and thus expires first], and (2) the PTO is solely responsible for the delay in the issuance of the first-filed application." *In re Janssen Biotech, Inc.*, 880 F.3d 1315, 1325 (Fed. Cir. 2018) (quotations omitted). However, "if an applicant can file all of its claims in one application, but elects not to, it is not entitled to the exception of the two-way test." *In re Berg*, 140 F.3d 1428, 1434 (Fed. Cir. 1998).

### 3. Under *Gilead* and *AbbVie*, only *expiration* dates are relevant to evaluating ODP between two post-URAA patents.

Although issue dates (but not filing dates) were relevant before the URAA, afterwards an earlier issue date lacks such relevance and can no longer avoid ODP. As explained in *Gilead*, looking at which patent issued first "does not necessarily work properly for patents to which the URAA applies, because there are now instances … in which a patent that issues first does not expire first."  753 F.3d at 1215.  To determine whether one URAA patent qualifies as an ODP reference to another, "comparison of [the] patent expiration dates [] should control."  *Id*.

*Gilead* thus rejected the argument that a later-issued, earlier-expiring patent could not be an ODP reference to an earlier-issued, later-expiring patent.  Like Allergan here, the patentee argued that its later-issued patent "in no way extends the term of the exclusivity for" its earlier-issued patent.  *Id*. at 1214.  Yet this Court saw "little import" to that chronology, which does not diminish "the public's freedom to use the invention claimed in a patent and all obvious modifications of it after that patent *expired*."  *Id*. at 1214-15.  This Court held that "an earlier-expiring patent can qualify as an [ODP] reference for a later-expiring patent under the circumstances here"—i.e., where the later-expiring patent issued first.  *Id*. at 1217.

This Court in *AbbVie* confirmed "a later-issued, but earlier-expiring patent could qualify as a double patenting reference, and thus invalidate an earlier-issued, but later expiring patent."  764 F.3d at 1374.  Under the URAA, ODP "continues to

18

apply where two patents that claim the same invention have different expiration dates" because "[p]atents claiming overlapping subject matter that were filed at the same time still can have different patent terms due to examination delays at the PTO." *Id*. at 1373-74 (citing 35 U.S.C. § 154(b)). Thus, the test for ODP is simple: "[I]f the later expiring patent is merely an obvious variation of an invention disclosed and claimed in the reference patent, the later expiring patent is invalid for [ODP]." *Id*. at 1379 (quotation, alterations omitted).

### 4. *Breckenridge* and *Ezra* define the only two narrow exceptions to basing ODP on expiration dates.

Since *Gilead* and *AbbVie*, this Court has recognized two narrow exceptions to the rule that expiration governs ODP. Neither applies here.

First, in *Breckenridge*, the Court considered the "narrow legal question" of whether "a post-URAA patent that issues after and expires before a pre-URAA patent qualify as a double patenting reference against the pre-URAA patent," and "conclude[d] under the circumstances of this case that it cannot." 909 F.3d at 1361-62. Based on the "intervening change in law by Congress defining a patent's term," the Court "appl[ied] the traditional [ODP] practices extant in the pre-URAA era to the pre-URAA [] patent." *Id*. at 1357-58. Holding otherwise would conflict with "the URAA transition statute," 35 U.S.C. § 154(c)(1), which provides that patents filed before the URAA but issuing after have "the greater of" either patent term under pre- and post-URAA regimes. *Id*. at 1366. This Court in *Breckenridge*

19

made clear, however, that it "limit[ed] [its] opinion to the specific facts of th[at] case." *Id*. at 1366 n.3.

*Breckenridge*'s "narrow" and "specific" exception does not apply here because the challenged '356 patent and the reference patents were all filed after the URAA's 1995 effective date.  Appx14407; Appx4225.  *Breckenridge* confirms that where, as here, "both patents [a]re post-URAA," *Gilead* applies and "the proper reference point for an [ODP] inquiry is the expiration date of the patent in question."  909 F.3d at 1363-64; *see also id*. at 1358 (reaffirming that "expiration date is the benchmark of [ODP]" post-URAA), 1363 (under URAA, "a patent that issues after but expires before another patent can qualify as a [ODP] reference against the earlier-issuing, but later-expiring patent").

Second, in *Novartis AG v. Ezra Ventures LLC*, the Court held that a patent expiring later than another only because of patent term *extension* ("PTE") under 35 U.S.C. § 156 is not subject to ODP because, under that provision, expiration for ODP is calculated *before* applying PTE.  909 F.3d 1367, 1373-74 (Fed. Cir. 2018). This Court relied on "the contrast between § 156 for PTE with the language of § 154 for [PTA]," which "expressly excludes patents in which a terminal disclaimer was filed from the benefit of a term adjustment for PTO delays."  *Id*. at 1373 (quotation omitted) (citing 35 U.S.C. § 154(b)(2)(B)).  Unlike PTA, PTE "is not foreclosed by a terminal disclaimer," and thus "if a patent is terminally

20

disclaimed to another patent to overcome an [ODP] rejection and then term-extended under § 156 …, it necessarily will expire after the patent to which it had been subject to an [ODP] rejection." *Id.* at 1374.

The judgment here is consistent with *Ezra* because the district court relied on the '356 patent's expiration date *before* applying PTE under § 156. Appx45 n.10; Br. 5, 44 n.10. Moreover, *Ezra* involved an ODP challenge to a pre-URAA patent over a post-URAA patent "governed by different statutory patent term regimes." 909 F.3d at 1370. Like *Breckenridge*, *Ezra* reiterated that, "[i]n *Gilead*, where the relevant patents were both post-URAA patents, this court found that a patent that issues after, but expires before, another patent could qualify as a double patenting reference for that other, later-expiring patent." *Id*. at 1374.

**B.** ***In re Cellect* confirms that an earlier-filed, earlier-issued patent that expires later because of PTA can be invalidated for ODP over a later-filed, later-issuing patent that did not receive PTA.**

After *Ezra*, arguably an open question was whether a patent expiring later than a commonly held patent due solely to PTA under § 154(b) is subject to ODP. This was the parties' dispute before the district court here—Allergan argued PTA should not result in ODP; Sun argued it should. Appx45-46. *In re Cellect* resolved that question squarely in Sun's favor: "ODP for a patent that has received PTA … must be based on the expiration date of the patent after PTA has been added." 81

F.4th at 1229.  That holding is dispositive and applies equally where, as here, the challenged patent was filed and issued before the reference patents.

**1.     The Patent Office expressly found that an earlier-filed, earlier-issued patent could be invalid for ODP.**

Allergan mischaracterizes *In re Cellect* as a "factually complex" case where "[t]he Patent Trial and Appeal Board had found that the interplay of [a] complex web of patents meant that none could extend past the term" of an earlier-expiring family member.  Br. 26.  That is inaccurate.  *In re Cellect* affirmed four separate decisions, each involving a *single* challenged patent before the Board (81 F.4th at 1219)—not a "complex web."  This Court treated Appeal 2021-005302, which invalidated U.S. Patent No. 6,424,369 (the "'369 patent"), "as representative" of those decisions.  *Id*. at 1219 n.1.

In that representative case, the Board considered ODP rejections for certain claims of the '369 patent over two reference patents: U.S. Patent Nos. 6,862,036 (the "'036 patent") and 6,452,626 (the "'626 patent").  *Ex parte Cellect*, Appeal 2021-005302, 2021 WL 5755327, at *1-2 (PTAB Dec. 1, 2021).  Allergan incorrectly states Cellect "never disputed that the reference patents could properly serve as the basis for finding ODP."  Br. 28.  But Cellect challenged *both* references and succeeded in disqualifying the '626 patent, which "cannot be used as an [ODP] reference because the '626 Patent expired after the '369 Patent."  *Ex parte Cellect*, 2021 WL 5755327, at *9, *10 n.6.

22

As to the '036 patent, however, the Board found it *was* a proper ODP reference because it "expired *before* the challenged ['369] patent." *Id*. at *10 & n.6.  This was true even though the '036 reference patent was both filed and issued after the challenged '369 patent, which expired later because of PTA.  *Id*. at *10.  The Board illustrated this relationship in a "timeline [that] shows the relevant dates for the two patents, including priority, filing, issuance, expiration, and PTA, with the challenged patent on top and the '036 patent below":



*Id*.

The Board deemed the '369 patent the "later" patent—despite being filed and issuing earlier—because of its later expiration.  As the Board explained, while "double patenting and the need for a terminal disclaimer generally only apply to the *later* patent," this begs the question of "how to determine which patent is 'later.'"  *Id*. at *3.  Citing *Breckenridge*, the Board explained that "[t]he answer depends on whether the patents issued from applications filed on or after" the

URAA's effective date: "For two post-URAA patents, the 'later' patent generally is determined by looking at the expiration date." *Id*. (citing *Breckenridge*, 909 F.3d at 1362-63, 1366).

The only question this Court had not already addressed was whether the expiration date for ODP purposes should be calculated before or after applying PTA. *Id*. at *3. The Board concluded that the relevant date was *after* applying PTA. *Id*. at *7. It noted that *Ezra* held "a terminal disclaimer applies *before* a PTE," and thus ODP "also should be considered *before* a PTE." *Id*. at *4. But this outcome was "based on the difference between § 156 and § 154," which (unlike § 156) "is clear that any terminal disclaimer should be applied *after* any PTA." *Id*. at *5-6 (citing 35 U.S.C. § 154(b)(2)(B)). Because "terminal disclaimers arise almost exclusively to overcome" ODP, "both [ODP] and terminal disclaimers should be considered *after* any PTA." *Id*. at *6-7. Applying that rule to the earlier-filed '369 patent, the Board found that, "after applying the PTA, [it] expired after the '036 patent due to the challenged patent having 45 days of PTA beyond the expiration date of the '036 patent," and thus "the later-expiring claims of the challenged patent were properly rejected for [ODP] over the earlier-expiring claims of the '036 patent." *Id*. at *11.

**2.    This Court affirmed the Patent Office's decision and rejected the patentee's statutory and equitable arguments.**

Cellect appealed the Board's decision invalidating the '369 patent and similar decisions for three other related patents to this Court, which affirmed all four decisions.  *In re Cellect*, 81 F.4th at 1219.  Along with the patents in those other decisions, this Court illustrated the relationship between the earlier-filed, earlier-issued (but later-expiring) '369 patent and the later-filed, later-issued (but earlier-expiring) '036 patent:



*Id*. at 1220 (annotated).  This Court noted that the earlier-filed, earlier-issued "'369 patent claims were [] found to be unpatentable over the '036 patent claims" and that "all invalidated claims can be traced back to the single family member patent that did not receive a grant of PTA: the '036 patent."  *Id*.

This Court affirmed the Board's decisions and held that "an ODP determination depends on an assessment of obviousness, i.e., whether the claims of a *later-expiring* patent would have been obvious over the claims of an *earlier-expiring* patent owned by the same party.  If so, absent a terminal disclaimer, the later-expiring claims are invalid." *Id*. at 1226 (emphasis added).  The Court further held this rule applies even where expiration dates differ due to PTA. *Id*. at 1226-30.  The Court thus rejected Cellect's argument that it received no "improper timewise extension of a patent term." *Id*. at 1229.  The Court held that "any extension" of the challenged claims past the expiration of the '036 patent (which was patentably indistinct and received no PTA) "constitutes an inappropriate timewise extension for the asserted claims of the challenged patents.  To hold otherwise would, in effect, confer on the reference claims of the '036 patent PTA to which they were not entitled." *Id*. at 1229-30.

The Court also rejected Cellect's argument that a "statutorily mandated extension, including PTA and PTE, cannot be cut short by a judge-made doctrine like ODP." *Id*. at 1227.  This Court distinguished PTE under § 156, which does not exclude terminally disclaimed patents, from PTA under § 154, which "have quite distinct purposes." *Id*.  The Court found "nothing in the PTA statute to suggest that application of ODP to the PTA-extended patent term would be contrary to the congressional design." *Id*.  In fact, "the statutory recognition of the

26

binding power of terminal disclaimers in § 154(b)(2)(B) is tantamount to a

statutory acknowledgement that ODP concerns can arise when PTA results in a

later-expiring claim that is patentably indistinct." *Id.* at 1228.

Lastly, the Court rejected Cellect's argument that ODP should not apply

because it had "acted in good faith" and "did not engage in gamesmanship":

"[G]ood faith during prosecution does not entitle [an applicant] to a patent term to

which it otherwise is not entitled," and the "ability to show that it did not engage in

gamesmanship in obtaining a grant of PTA is not sufficient to overcome a finding

that it has received an unjust timewise extension of term." *Id.* at 1230.

On January 19, 2024, this Court denied Cellect's petition for rehearing en

banc without dissent. *In re Cellect*, No. 22-1293, Dkt. 182 (Fed. Cir.).

## C.    The district court properly found ODP by applying this Court's precedent to undisputed facts.

This case is materially indistinguishable from *In re Cellect* and presents a

clear-cut application of *Gilead* and its progeny.  Allergan does not dispute the

district court's findings that (1) the '356, '011, and '709 patents "are commonly

owned"; (2) the '011 and '709 patents expire on March 14, 2025; (3) the '356

patent expires (with PTA) on June 24, 2026—later than the '011 and '709

patents—and (4) asserted claim 40 of the '356 patent and certain claims of the '011

and '709 patents "are not patentably distinct from each other."  Appx44-45.  These

undisputed facts are dispositive.  Because "the later expiring patent [claim] is

27

merely an obvious variation of an invention disclosed and claimed in the reference patent[s], the later expiring patent [claim] is invalid for [ODP]." *AbbVie*, 764 F.3d at 1379 (quotation, alterations omitted).

### 1. Allergan's reliance on filing and issuance dates fails under this Court's case law, which focuses on *expiration* dates.

Allergan seeks a new ODP exception for "first-filed, first-issued" patents, arguing they can never be invalid for ODP "simply because a later-filed patent in the same family has an earlier expiration date." Br. 31. But Allergan's novel theory fails under *Gilead* and *In re Cellect*. Under *Gilead*, the *only* "date that really matter[s]" is "patent expiration"—not filing or issuance—and thus "patent expiration dates [] should control." 753 F.3d at 1215. And *In re Cellect* invalidated an earlier-filed, earlier-issued patent (the '369 patent) over a later-filed, later-issued patent in the same family (the '036 patent). 81 F.4th at 1219-20. There is no exception if the earlier-filed, earlier-issued patent happens to be the first-filed, first-issued patent. Nor should there be.

Allergan tries to distinguish *In re Cellect* because it did not involve the very "*first*-filed, *first*-issued patent in the family" (Br. 27 (emphasis added)), but that is immaterial. Allergan's semantic argument about the "first" or "original" patent term begs the question of which patent term is "first" and "original." To the public that is excluded from practicing an invention claimed by multiple patents, the "first" and "original" term is whichever *expires* first. ODP bars "extension" of *that*

term—here, the terms of the '011 and '709 patents, which are *not* entitled to PTA. *See Gilead*, 753 F.3d at 1214 (ODP prevents a situation where "a patent expires and the public is nevertheless barred from practicing obvious modifications of the invention claimed in that patent because the inventor holds another later-expiring patent"); *In re Cellect*, 81 F.4th at 1227 (rejecting patentee's position because it would "effectively extend the overall patent term awarded to a single invention … by allowing patents subject to PTA to have a longer term than the reference patent"); *Ex parte Cellect*, 2021 WL 5755327, at *3 ("the 'later' patent generally is determined by looking at the *expiration* date").

Allergan's arguments for exempting the "first" patent from ODP are the same arguments this Court rejected in both *Gilead* and *In re Cellect* for exempting other "earlier" patents.  Allergan contends that "[t]he awarded term of a first-filed, first-issued patent for an invention is not an extension of any other patent term" because "[t]here is literally no previously claimed subject matter to 'double patent,' nor any original monopoly to extend."  Br. 34; *see also* Br. 1, 12-14, 19, 31-38.  Yet that is the same argument rejected in *Gilead* that an earlier patent "in no way extends the term of the exclusivity for" a later patent.  753 F.3d at 1214. As this Court explained, it is of "little import" that the challenged patent came "first" if it "does not expire first."  *Id*. at 1214-15.

Similarly, despite Allergan's assertion that Cellect "waived" Allergan's argument here (Br. 26), Cellect raised effectively the same objection by insisting it did not receive an "improper timewise extension of a patent term" for its earlier-filed, earlier-issued patent. *In re Cellect*, 81 F.4th at 1229. Again, this Court rejected that argument because it "would, in effect, confer on the reference claims of the [earlier-expiring] patent PTA to which they were not entitled." *Id*. at 1229-30. The same is true here.

Allergan's argument that it is not "possible to file a terminal disclaimer" during prosecution when a later-filed "patent (or even a later-filed application) does not yet exist" (Br. 13) is equally irrelevant. Allergan ignores that terminal disclaimers are not limited to prosecution but can be filed at any time until the reference patent expires, "even after a finding that the challenged patent is invalid for [ODP]." *Boehringer*, 592 F.3d at 1347. Indeed, Allergan acknowledges it can still "file a terminal disclaimer with respect to the '356 patent." Dkt. 4-1 at 3.

Even if a terminal disclaimer were unavailable, that would not avoid ODP. In *In re Cellect*, "no terminal disclaimer could be filed to cure the rejection since the patents had expired," yet that did not preclude ODP. 81 F.4th at 1221. As this Court held, "ODP for a patent that has received PTA, *regardless whether or not a terminal disclaimer is required or has been filed*, must be based on the expiration date of the patent after PTA." *Id*. at 1229 (emphasis added).

Instead of applying this central holding, Allergan focuses on dictum in *In re Cellect* that "*non-asserted* claims in the challenged patents are entitled to their full term, including the duly granted PTA, unless they are found to be later-filed obvious variations of earlier-filed, commonly owned claims." Br. 28 (quoting 81 F.4th at 1230) (emphasis altered). But Allergan ignores the next sentence: "We have no basis for consideration of that issue here," which confirms the preceding sentence is dictum. *In re Cellect*, 81 F.4th at 1230. The Court appears to have included this dictum in response to a colloquy at oral argument simply to clarify that ODP applies on a claim-by-claim basis and does not invalidate unchallenged claims. No. 22-1293, Oral Arg. 19:26-20:33.

Moreover, Allergan ignores the statement earlier in the same paragraph that patents generally expire "twenty years from the date on which *the priority application was filed*." *In re Cellect*, 81 F.4th at 1229 (emphasis added). Thus, the dictum that unchallenged claims could be invalidated as "later-filed obvious variations of earlier-filed, commonly owned claims" (*id*. at 1230) refers to *effective filing* dates—i.e., priority dates governing expiration—not the filing dates of continuations in the same family. Allergan's reading of this dictum as prohibiting ODP where the reference patent issues directly from a later-filed application cannot be correct because it would contradict the *holding* of *In re Cellect*, which *did* invalidate claims issuing from an earlier-filed application in the same family—

31

and would conflict with *Gilead*'s holding that the only "date that really matter[s]" is "patent expiration." 753 F.3d at 1215.

Allergan relies on another dictum that ODP "limits the term of a patent or, at least, ties later-filed, commonly owned, obvious variations to the expiration date of an earlier-filed reference patent." Br. 28-29 (quoting *In re Cellect*, 81 F.4th at 1226). Allergan focuses on the "later-filed" and "earlier-filed" qualifiers in the second part of the sentence but ignores that those qualifiers are preceded by "*or, at least,*" which confirms ODP is *not* confined to "later-filed" variants of "earlier-filed" claims but also "*limits the term of a patent*" in other situations, as stated in the first clause. *Id.* (emphasis added).

Allergan also relies (at 28-29) on a district court decision in *Acadia Pharmaceuticals Inc. v. Aurobindo Pharma Ltd.*, No. 20-985-GBW, 2023 WL 8622048 (D. Del. Dec. 13, 2023). Of course, that decision is not binding. And *Acadia*'s statements about "earlier-filed" patents being somehow exempt from ODP are mere dicta because the court had already found that the challenged patent satisfied the safe harbor of 35 U.S.C. § 121 for divisional applications filed after a restriction requirement. *Id.* at *6-7. The (erroneous) finding that an "earlier-filed, earlier-issued" patent could not be invalid for ODP was made "[i]n the [a]lternative." *Id.* at *7. Regardless, the court cited no controlling caselaw and acknowledged that *In re Cellect* "invalidated an earlier-filed patent." *Id.*

Thus, there is no exception to ODP for "first-filed, first-issued" patents. Because Allergan's '356 patent expires later than commonly owned patents claiming obvious variants of claim 40, that claim is invalid for ODP.

### 2. Allergan's statutory arguments lack merit and contradict this Court's precedent.

Nothing in the Patent Act precludes this result. Allergan repeatedly argues that ODP "cannot be invoked to truncate the statutorily guaranteed term" (*e.g.*, Br. 1), but ODP *always* truncates a statutory term because *all* patent terms are set by statute. For post-URAA patents like those here, the default term is 20 years from the effective filing date. 35 U.S.C. § 154(a)(2). But if a patentee obtains multiple patents with patentably indistinct claims that expire on different dates, that term may be truncated. This is how ODP has always worked.

Allergan alters a quote from *Breckenridge* to argue that this Court held "ODP does not apply to 'truncate the term statutorily assigned to the [earlier-filed, earlier-issued] patent'" (Br. 39 (alteration Allergan's)), but that mischaracterizes this Court's holding. The unaltered quote is that "*a change in patent term law should not truncate the term statutorily assigned to the pre-URAA* '772 patent." 909 F.3d at 1358 (emphasis added). That narrow holding is irrelevant here: The patents-at-issue are all *post*-URAA, and there is no "intervening change in law" or "transition statute" to override ODP. *Id.* at 1357, 1366.

33

Allergan's argument that § 154(b) overrides the "judge-made doctrine" of ODP with "statutorily mandated" PTA (Br. 43) contradicts *In re Cellect*, which rejected the same argument that a "statutorily mandated extension … cannot be cut short by a judge-made doctrine like ODP." 81 F.4th at 1227. There is "nothing in the PTA statute to suggest that application of ODP to the PTA-extended patent term would be contrary to the congressional design," and the "binding power of terminal disclaimers in § 154(b)(2)(B) is tantamount to a statutory acknowledgement that ODP concerns can arise." *Id*. at 1227-28. Likewise, Allergan errs in arguing that § 154(b) categorically "guarantee[s]" "at least a 17-year patent term." Br. 41. Allergan ignores that the "patent term guarantees" in § 154(b)(1)(A)-(C) are "subject to the limitations under paragraph (2)," which includes the "disclaimed term" under § 154(b)(2)(B).[1]

The judgment here also comports with 35 U.S.C. § 120, which simply authorizes continuation applications. Br. 35. To be sure, patentees can exercise their option to file continuation applications. They can also obtain multiple, patentably indistinct claims in either the same patent or patents that share the same

---

[1] Allergan notes that an uncodified clause of the AIA directs the PTO to "administer" 35 U.S.C. § 102(c) "in a manner consistent" with legislative history. Br. 42 n.9. That is irrelevant. Section 102(c) governs common ownership under joint-research agreements, not ODP. Regardless, the legislative history Allergan quotes merely notes that first-issued patents may render later-issued patents invalid. Br. 42. It does not say first-issued patents are immune from ODP.

expiration date. Alternatively, patentees can obtain patents that expire on different dates if their claims are patentably distinct. What a patentee *cannot* do, however, is obtain multiple patents that claim the *same* invention (or an obvious variant) that expire on *different* dates. This would violate "the public's right to use" obvious variants "claimed by an inventor when his patent expires." *Gilead*, 753 F.3d at 1212. Nothing in § 120, § 154, or any other section of the Patent Act authorizes that result. On the contrary, the Patent Act limits applicants to "a patent" per invention. 35 U.S.C. § 101. Allergan's statutory arguments thus fail.

### 3. Allergan's equitable arguments lack merit and, regardless, ODP would be proper even under a two-way test.

Lastly, Allergan cannot avoid ODP by invoking amorphous "equitable concerns," its purported lack of "gamesmanship," or its alleged conduct as "a diligent applicant." Br. 1, 10, 44-45. *In re Cellect* rejected the same arguments: "good faith during prosecution does not entitle [an applicant] to a patent term to which it otherwise is not entitled," and lack of "gamesmanship in obtaining a grant of PTA is not sufficient to overcome" ODP. 81 F.4th at 1230.

Whether "a split in ownership" could occur (Br. 37) is also not dispositive. There was no such risk in *Gilead* either: The patents there were "subject to a common ownership requirement" and did "not involve the potential for harassment by multiple assignees asserting essentially the same patented invention." 753 F.3d

at 1218-19, 1220 (Rader, J., dissenting).  Yet that did not prevent this Court from holding that the challenged patent was subject to ODP.

At bottom, there is nothing inequitable about applying ODP here, where it is undisputed that the patentee *chose* to obtain multiple patents with indistinct claims. Appx44-45.  This is a problem of Allergan's own making.  Had it simply confined its claims to a single patent or drafted continuation applications with patentably distinct claims, Allergan would be able to retain and enjoy the full statutory term of the '356 patent, including PTA.  Instead, Allergan made a conscious choice at its own peril, attempting to expand its patent rights by filing continuation applications that issued with additional claims indistinct from those of the '356 patent.  Once patents with those additional claims expire, this will end Allergan's term for any patent with indistinct claims, including the '356 patent—regardless of when the underlying application was filed or when that patent issued.

Even if there were some equitable concern about invalidating an earlier-filed patent, it would not preclude ODP—at most, it would trigger the two-way test (*supra* 17), which would make no difference here.  Allergan cites *In re Braat* to argue that any extension of the '356 patent's term was not "*unjustified*" (Br. 46), but *Braat* did not hold that equitable concerns immunize patents from ODP. Rather, *Braat* held that the PTO should have applied, in that particular case, the

36

"two-way" test for ODP, which requires the challenged and reference claims to be patentably indistinct from each other.  937 F.2d 589, 594 (Fed. Cir. 1991).

Here, Allergan waived any request to apply the two-way test because it did not make that request before the district court or in its opening brief to this Court. Moreover, the patentee here could have filed "all of its claims in one application," which means "it is not entitled to the exception of the two-way test." *Berg*, 140 F.3d at 1434.  Even if the two-way test applied, however, it would make no difference because the district court found that the challenged and reference claims "are not patentably distinct *from each other*."  Appx45 (emphasis added).  Thus, the district court's findings satisfy both the default one-way test *and* the narrow two-way exception for ODP, which moots any alleged equitable concerns. Accordingly, this Court should affirm the judgment.

## II.    Allergan fails to show clear error in the district court's findings that the '516 and '179 patents' representative claims lack written description.

This Court should also affirm the judgment that the asserted formulation claims are invalid for lacking written description, which turned on a fact-intensive analysis of the specification.  Despite its shotgun approach in alleging fault with the district court's findings, Allergan fails to show any legal or clear error.

### A.    The written-description requirement prevents patentees from drafting overbroad claims to cover what they did not invent.

The written-description requirement of 35 U.S.C. § 112 requires that the specification "reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the [patent's] filing date." *Ariad*, 598 F.3d at 1351.  Section 112 "plays a vital role in curtailing claims … that have not been invented, and thus cannot be described." *Id*. at 1352.  It "limits patent protection to those who actually perform the difficult work of 'invention'—that is, conceive of the complete and final invention with all its claimed limitations—and disclose the fruits of that effort to the public." *Id*. at 1353.  "[T]he purpose of the written description requirement is to ensure that the scope of the right to exclude, as set forth in the claims, does not overreach the scope of the inventor's contribution to the field of art as described in the patent specification." *Id*. at 1353-54 (quotation omitted).  This is a "*quid pro quo* of the patent grant and ensures that the public receives a meaningful disclosure in exchange for being excluded from practicing an invention for a period of time." *Id*. at 1354.

Where a patentee claims an invention broadly, covering multiple embodiments, the written-description requirement is not satisfied unless the specification "sufficiently demonstrates that the inventors possessed the full scope of the claimed invention." *Juno Therapeutics, Inc. v. Kite Pharma, Inc.*, 10 F.4th 1330, 1336 (Fed. Cir. 2021); *see also id*. at 1337 (holding claims invalid where

specification "provides nothing to indicate that the inventors possessed the full scope of the genus that they chose to claim").

This principle applies equally when a patentee broadens its claims by *omitting* a limitation to cover a different invention than it described. For example, in *ICU Medical*, the patentee initially obtained claims to medical valves comprising a "spike." 558 F.3d at 1374-75. It later obtained additional claims that omitted the "spike" limitation, which this Court called "spikeless (or spike-optional) claims." *Id*. at 1372-73. This Court "refer[red] to these claims as spikeless not because they exclude … a spike but rather because these claims do not include a spike limitation—i.e., they do not require a spike." *Id*. at 1377. The "spikeless claims are broader than [the] spike claims because they do not include a spike limitation" and therefore "cover[] those valves that operate with a spike and those that operate without a spike." *Id*. at 1378.

This Court held that the broad, "spikeless" claims lacked written description because "the specification describes only medical valves with spikes," and a POSA "would not understand the inventor of the [] patents to have invented a spikeless medical valve," which fell within the scope of the "spikeless" claims that covered valves without spikes. *Id*.

**B.    The record amply supports the district court's factual findings that the representative claims lack written description.**

The facts here closely track *ICU Medical*.  As explained above, Allergan originally asserted patents whose claims required eluxadoline formulations with a specific glidant, colloidal silica.  But Allergan dismissed those patents on the eve of trial.  Appx4797-4800.  The claims asserted at trial, which were prosecuted after claim construction, removed any requirement for a glidant and are thus broad enough to cover formulations without a glidant. Appx9223; Appx11593. The record supports the district court's factual findings that these broader, glidant-optional claims lack written-description support.

Citing both sides' experts, the district court found that "[n]one of the formulations disclosed in the patent specification of the asserted patents are made without a glidant."  Appx16 (citing Appx5856-5857 (141:13-142:13) (Gemeinhart), Appx6136 (421:1-18) (Berkland)).  Instead, "[t]he patent specification [] only discloses a relatively narrow group of eluxadoline formulations," and "[i]n each of those formulations, a glidant (e.g., colloidal silica) is used."  Appx17 (citing Appx6136 (421:1-3) (Berkland), Appx5857 (142:3-9) (Gemeinhart), Appx84-87 ('179 patent 11:23-12:3, 13:1-56, 16:10-17:40)).

The district court made specific factual findings about how a POSA reading the specification would understand its consistent use of a glidant.  Citing expert testimony, the district court found "[a] POSA would understand that in

some cases a glidant may be necessary"; "a glidant would be used when it is

necessary"; and "[a] POSA would not understand that a glidant is, 'by definition,'

an optional excipient." Appx16 (citing Appx6301, Appx5962 (247:10-18)

(Gemeinhart), Appx6027 (312:5-9) (Gemeinhart)). Notably, the specification's list

of "optionally include[d]" excipients does *not* include a glidant. Appx194 (12:33-

46); Appx5833-5835 (118:12-120:2) (Gemeinhart). And Allergan's expert, Dr.

Berkland, agreed that "[e]very process description related to the claims …

include[s] a glidant." Appx6146-6147 (431:25-432:4).

The district court concluded that "the specification here fails to show that the

patentee was in possession of a formulation in which the inclusion of the glidant

was optional," which is analogous to *ICU Medical*. Appx18. "Just as spikeless

claims in *ICU Med*[*ical*] lacked adequate written description because the

specification failed to disclose a spikeless valve, the asserted claims here lack

written description because the specification fails to disclose a formulation that

does not have a glidant or where a glidant would be understood as optional."

Appx17-18. Allergan identifies no error in that conclusion.

### 1.    Claim 26 is "glidant-optional" because it does not require a glidant and thus covers formulations without a glidant.

Allergan's lead argument, which it limits to the '516 patent, is that "[t]he

district court committed claim-construction error" because claim 26 "does not

include any 'glidant-optional' language" and thus "does not contain any limitation

regarding the inclusion or not of glidants." Br. 47-49 (brackets omitted). But this argument lacks merit because the district court did not import any glidant-related limitation, and it did not construe the claims any differently than Allergan. As Allergan admits, the district court recognized that claim 26 "does 'not list a glidant as a limitation.'" Br. 48 (quoting Appx16).

Allergan's argument rests on a misunderstanding of "optional," which the district court used in the same way as in *ICU Medical*. There, this Court referred to claims as "spikeless (or spike-optional)," "not because they exclude … a spike but rather *because these claims do not include a spike limitation*." 558 F.3d at 1372-73, 1377 (emphasis added). Just like claim 26 does not say anything about a "glidant," the "spike-optional" claims did not say anything about spikes. Thus, they "cover[ed] those valves that operate with a spike and those that operate without a spike." *Id*. at 1378. Likewise, claim 26 is "glidant-optional" because it covers formulations with or without a glidant.

Allergan tries to distinguish claim 26 of the '516 patent from claim 7 of the '179 patent, which expressly states "a glidant and/or a lubricant" is "optionally" included. Br. 8, 51 n.12. But Allergan waived any argument that these claims differ in scope with respect to excluding a glidant by not raising this distinction at trial, let alone before trial. While a *footnote* in its post-trial brief made a similar point (Appx16107-16108 n.2), "arguments raised in footnotes are not preserved."

*SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006).

Indeed, the *body* of Allergan's post-trial brief conceded—for both the '516 and

'179 claims—that "[*t*]*he only dispute* for Sun *is a narrow issue of fact: whether the

claimed invention requires a glidant* such as colloidal silica." Appx16113

(emphasis added). Allergan's argument that the '516 patent is exempt from this

factual inquiry is thus waived.

Regardless, even assuming some theoretical difference between a

"comprising" claim that lacks a glidant limitation and one that expressly states a

glidant is "optional," the district court's findings apply equally to both: "The patent

specification does not disclose that the patentee possessed a formulation of

eluxadoline that *either lacks a glidant or* signaled to a POSA that the inclusion of a

glidant in those formulations is optional." Appx17 (emphases added).

Allergan gains no traction with its analogy to a patent "claiming a car

comprising a specific type of catalytic converter, [where] an inventor is not

claiming possession of a car without a steering wheel (and the specification need

not describe such a car)." Br. 49. Steering wheels are unrelated to how catalytic

converters work, and a patent for a catalytic converter presumably would not teach

a POSA that the invention requires a steering wheel. By contrast, here, a POSA

would understand a glidant *is* required. A better analogy is a patent for a catalytic

converter where the specification identifies a specific alloy as a required catalyst.

If the patentee drafted claims reciting the converter's components but omitted that alloy, they would also lack written description.

Allergan argues that the specification recites "the specified amounts" of ingredients in claim 24 (Br. 50), but the passages Allergan cites expressly require a glidant, which supports the district court's findings: Allergan cites the formulation at 11:21-12:2 (Appx194), which contains "a glidant" (Appx194 (11:44)), and the formulation in Table 1 (Appx196), which also contains "[c]olloidal silica" as a "[g]lidant" (*id.*).

Allergan argues Dr. Gemeinhart admitted "a POSA reading the patent 'could pick out [claim 26's] embodiment'" from a laundry list of ingredients (Br. 50 (quoting Appx5973-5974 (258:23-259:24)), but whether a POSA *could* "pick out" the claim elements is not enough to satisfy § 112.  Dr. Gemeinhart explained "that section [of the specification], that embodiment, doesn't describe why" or "how to choose those excipients," or whether those excipients would even "form[] a tablet." Appx5973 (258:10-19).  Patentees "cannot disclose a forest … and then later pick a tree out of the forest and say here is my invention.  In order to satisfy the written description requirement, the blaze marks directing the skilled artisan to that tree must be in the originally filed disclosure." *Purdue Pharma L.P. v. Faulding Inc.*, 230 F.3d 1320, 1326-27 (Fed. Cir. 2000).  Here, Dr. Gemeinhart testified that a POSA could potentially pick out "thousands" of combinations (Appx5828-5829

(113:17-114:6)), but the specification does not "teach a POSA to actually pick that specific combination [in claim 26] out of th[ose] thousands of combinations" (Appx6028) (313:3-22)).  And the specification stresses that "different formulations" of eluxadoline "may have very different … properties."  Appx53 (1:41-50).  Thus, the district court did not clearly err in finding the specification fails to describe claim 26.

> **2.    The district court properly relied on expert testimony about how a POSA would understand the specification.**

Allergan also fails to show clear error in the district court's reliance on expert testimony to determine how a POSA would understand the specification. Allergan raises this argument "for the first time on appeal" and, therefore, "the issue is waived."  *Aventis Pharma Deutschland GmbH v. Lupin, Ltd.*, 499 F.3d 1293, 1299 (Fed. Cir. 2007).  Before the district court, Allergan argued the opposite—insisting it was "wrong" to disparage expert testimony as mere "extrinsic evidence" because this Court "has emphasized the importance of the context of the existing knowledge for evaluating written description," which must be "judged from the perspective of one of ordinary skill in the art as of the relevant filing date."  Appx16116 (quoting *Immunex Corp. v. Sandoz Inc.*, 964 F.3d 1049, 1063 (Fed. Cir. 2020)).  There is nothing wrong with crediting expert testimony that the specification fails to describe the claims to a POSA.  *See Biogen*, 18 F.4th

at 1343 (affirming where "the district court credited [defendant]'s expert testimony at trial" to find claims lacked written description).

Allergan argues that reliance on expert testimony distinguishes this case from *ICU Medical*, which "stands for the proposition that, where the *specification* describes a structural component as necessary to the invention, there is no written description for a claim without that structure." Br. 56. But that is consistent with the district court's findings here: It repeatedly found that "*the specification* fails to disclose a formulation that does not have a glidant or where a glidant would be understood as optional," and "*the specification* here fails to show that the patentee was in possession" of such a formulation. Appx18 (emphasis added); *see also* Appx16 (findings 7-9 all based on "the patent specification").

While *ICU Medical* did not cite trial testimony, that is because it was decided on summary judgment. 558 F.3d at 1376. Nothing in *ICU Medical* suggests there is any problem with considering expert testimony at trial, and this Court credited expert testimony in an analogous case. In *Tronzo v. Biomet, Inc.*, the defendant (Biomet) argued that the "specification describes only one cup—a conical cup—and thus does not provide sufficient support for claims … which are generic as to the shape of the cup." 156 F.3d 1154, 1158 (Fed. Cir. 1998). This Court agreed, crediting "relevant expert testimony of Biomet's witness, Dr. Hill, who testified that in his view as an orthopedic surgeon the [] patent disclosed only

a trapezoidal cup and nothing more." *Id*. at 1160. Likewise, the district court here credited expert testimony that a formulator would read the patent as disclosing only formulations with a glidant—and "a POSA would understand that using a glidant in a formulation would be a signal that it was necessary in order to achieve sufficient flow properties, unless noted otherwise." Appx19.

Allergan's argument that the district court erred by considering whether a glidant is "essential" (Br. 53) is waived because it also contradicts Allergan's arguments to the district court. In its post-trial brief, Allergan argued that the validity of its claims turned on whether the glidant "colloidal silica is 'essential' or 'critical'" (Appx16113-16114), and it conceded that if "the specification indicates that a structure is essential or critical to the invention, there is a lack of written description if the claims do not include a limitation directed to that structure" (Appx16115). Allergan's only argument to the district court was a factual one— that "glidants were not essential to the claimed invention." *Id*. Even now, on appeal, Allergan cites *In re Peters*, 723 F.2d 891 (Fed. Cir. 1983), to argue that claims may omit a feature the specification "does not describe … as essential or critical to the invention." Br. 57. The district court correctly distinguished *Peters* on its facts because here a glidant *is* critical to the alleged invention "based on the disclosure of the patent specification." Appx21.

The case Allergan cites as prohibiting an "essential element" test, *Cooper Cameron Corp. v. Kvaerner Oilfield Products, Inc.*, 291 F.3d 1317 (Fed. Cir. 2002), is inapposite. In *Cooper*, the Court distinguished an earlier case that "merely expounded upon the unremarkable proposition that a broad claim is invalid when the entirety of the specification clearly indicates that the invention is of a much narrower scope." *Id*. at 1323. The issue in *Cooper* was whether figures in the specification disclosed a disputed limitation, and this Court held they did. *Id*. By contrast, here there is no described embodiment (in the figures or elsewhere) without a glidant. Thus, the invention described in the specification is narrower than the asserted claims, which do not require a glidant.

Notably, Allergan does not dispute that "tablet compositions need 'sufficient flow characteristics' to be manufactured properly" and that some tablet compositions need a glidant. Br. 51. Nor does Allergan dispute that the claims here expressly require a tablet. Br. 7-8. As Allergan acknowledges, expert testimony supports these findings. Br. 51-52 (citing Appx5815-5816 (100:23-101:04) (Gemeinhart)).

Nevertheless, Allergan criticizes the district court's "logic" because "[e]ven if colloidal silica enhances flow, this does not mean that a particular formulation would necessarily lack sufficient flow without it." Br. 53. But Allergan cites no support for this attorney argument, which mischaracterizes the district court's

findings.  The district court did not find that *all* formulations need a glidant; it acknowledged that "a glidant may not be required to produce all pharmaceutical formulations."  Appx19.  It simply found that in *this* case, "the specification here fails to show that the patentee was in possession of a formulation in which the inclusion of the glidant was optional."  Appx18.

Allergan cites claim construction cases holding that preferred embodiments do not limit the claims (Br. 53-55), but the district court did not limit the claims, and it agreed that "patents are not limited to the specific embodiments disclosed in the specification."  Appx18.  The problem here is just the opposite: Allergan's claims are *not* limited to embodiments with a glidant.  This case is similar to *Liebel-Flarsheim Co. v. Medrad, Inc.*, where the patentee "broadened its claims during prosecution," "argued for a broad meaning, and succeeded, but suffers a Pyrrhic victory" because the broadened claims lacked § 112 support.  481 F.3d 1371, 1383 (Fed. Cir. 2007).  To paraphrase the holding there: "The irony of this situation is that [Allergan] successfully pressed to have its claims include a [glidant]less [formulation], but, having won that battle, it then had to show that such a claim was fully [described], a challenge it could not meet.  The motto, 'beware of what one asks for,' might be applicable here."  *Id*. at 1380.

### 3.     The district court properly applied the burden of proof.

Allergan's argument that the district court "'flipped' the burden of proving invalidity" (Br. 58) lacks merit.  The district court explicitly recognized that "patents are presumed valid, [and] a defendant bears the burden of proving invalidity by clear and convincing evidence."  Appx13 (citation omitted).  The district court held Sun to this burden, finding that "Sun has shown by clear and convincing evidence that the asserted claims … are invalid for lack of written description."  Appx26.  Nothing suggests otherwise.

Allergan quotes the district court's findings that "the specification makes no disclosure about whether the use of a glidant *is unimportant or just an optional component*" and that every embodiment recites a glidant "*without any indication that it was not required*" (*id*. (quoting Appx21, Appx18)), but it ignores the context of these findings, which the district court made to reject Allergan's argument that a glidant is "optional."  Appx18-20.  "[E]xplaining why a party's arguments are not persuasive does not constitute improper burden shifting."  *Ignite USA, LLC v. CamelBak Prods., LLC*, 709 F. App'x 1010, 1016 (Fed. Cir. 2017).  Indeed, the district court's statements are similar to this Court's statements in *ICU Medical* rejecting similar arguments.  558 F.3d at 1375 ("The patents neither describe piercing as optional nor describe any non-piercing item as a spike.");  *id*. at 1379 (patentee "failed to point to any disclosure in the patent specification that describes

a spikeless valve"); *id*. ("It is not enough that it would have been obvious to a person of ordinary skill that a [] seal could be used without a spike.").

The district court fully considered, and rejected, Allergan's argument that "the patent specification does not need to explicitly disclose that a glidant is optional." Appx18. Citing both sides' experts, the district court found "a POSA would understand that using a glidant in a formulation would be a signal that it was necessary in order to achieve sufficient flow properties, unless noted otherwise." Appx19 (citing Appx6079-6080 (364:18-21, 365:5-8) (Berkland), Appx6027 (312:5-9) (Gemeinhart), Appx6298, Appx6301)). Allergan shows no clear error in this case-specific finding about how a POSA would read the specification.

Regardless, "any mischaracterization of the burden of proof in an opinion, by itself, does not warrant reversal." *ISCO Int'l, Inc. v. Conductus, Inc.*, 123 F. App'x 974, 977 (Fed. Cir. 2005). "This court hears appeals from judgments, not from language used in justification of the judgment appealed from." *Pentec, Inc. v. Graphic Controls Corp.*, 776 F.2d 309, 317 (Fed. Cir. 1985). Even assuming the opinion here "misstates the law" (it does not), there is "sufficient evidence to support the judgment." *Id*.

### 4. The district court properly analyzed possession as a question of written description, not enablement.

In a final attempt to manufacture legal error, Allergan argues the district court "conflated" written description and enablement because a single sentence

states eluxadoline formulations without a glidant would not "work." Br. 59. But Allergan shows no error, much less harmful error, in that one word. The district court explicitly distinguished between written description and enablement (Appx12-13), and it repeatedly found the specification fails to show "possession," which is the standard for written description, not enablement. Appx17-18; Appx24; Appx26; *Ariad*, 598 F.3d at 1351.

The word "work" in a single sentence does not transform the district court's entire analysis into one of enablement. In *ICU Medical*, this Court also questioned whether the invention could "possibly work without a spike." 558 F.3d at 1375 n.4. Allergan described *ICU Medical* the same way in its post-trial brief, noting that the invention there required a spike "to work." Appx16115. Similarly, this Court has analyzed whether a POSA "would [] have thought [a formulation] would work" in invalidating claims for lacking written description. *Nuvo Pharms. (Ireland) Designated Activity Co. v. Dr. Reddy's Labs. Inc.*, 923 F.3d 1368, 1381 (Fed. Cir. 2019). Allergan's semantic argument thus fails.

### 5.    Allergan fails to show any clear factual error.

The rest of Allergan's brief challenges the district court's findings that the specification fails to describe a formulation without a glidant. Br. 60-62. Allergan does not dispute this is a pure question of fact reviewed for "clear error" (Br. 19, 60), which requires affirmance so long as "the trial court's determination … is

plausible in light of the entire record or where it chooses one of two permissible views of the evidence." *Kao Corp. v. Unilever U.S., Inc.*, 441 F.3d 963, 967 (Fed. Cir. 2006) (quotation omitted). "The burden of overcoming the district court's factual findings is, as it should be, a heavy one." *Merck Sharp & Dohme Corp. v. Hospira, Inc.*, 874 F.3d 724, 728 (Fed. Cir. 2017) (citing *Polaroid Corp. v. Eastman Kodak Co.*, 789 F.2d 1556, 1559 (Fed. Cir. 1986)).

Notably, Allergan does not—because it cannot—cite any *example* in the specification of a formulation without a glidant. Instead, it cites boilerplate language about combining eluxadoline with excipients in general, suggesting this broad disclosure provides sufficient written description. But "a description that merely renders the invention obvious does not satisfy the [written-description] requirement." *Ariad*, 598 F.3d at 1352. The district court did not clearly err in finding these generic disclosures fail to provide "[a] *precise* definition of the invention [that] is pivotal to establishing possession." *Biogen*, 18 F.4th at 1342 (emphasis added).

### a.    The "Summary of Disclosure" does not provide written-description support.

First, Allergan argues that the "Summary of Disclosure" at columns 4-5 teaches that a "tablet formulation can be composed of eluxadoline and *just* one (or more) of a total of five 'inert ingredient[s] selected from'" a group including a glidant. Br. 60 (citing Appx190-191 (4:01-5:27). But the district court found this

disclosure "just outlines the basic idea to create a formulation of eluxadoline with some combination of excipients in some proportions," and a POSA would not read it as "demonstrat[ing] possession of a formulation where a glidant is optional or not included." Appx25-26. The district court cited expert testimony supporting this factual finding, which is not clearly erroneous. *Id*.

Dr. Berkland contradicted Allergan's interpretation of this passage as describing an eluxadoline formulation with only one excipient, let alone the formulation in the asserted claims. Instead, he agreed "[i]t would make sense to a POSA to have more than one inert ingredient to achieve the goals of the patent"; these "disclosures don't say whether all of the ingredients that are listed need to be used or some are optional"; and the claimed "amounts do not appear here." Appx6158 (443:3-20); *see also* Appx6155-6157. Similarly, Dr. Gemeinhart opined that this language "doesn't give clear information of how you would create a formulation" and does not show that the inventors "possessed" any specific formulation. Appx5828-5830 (113:9-115:6). As Dr. Gemeinhart explained, "that section [of the specification], that embodiment, doesn't describe why" or "how to choose those excipients," or whether those excipients would even "form[] a tablet." Appx5973 (258:10-19).

Allergan cites Dr. Gemeinhart's view that "this 'broad disclosure' includes 'hundreds or thousands of formulations'" (Br. 60), but this confirms the *absence* of

54

written description.  The specification fails to "teach a POSA to actually pick [the claimed] combination out of th[ose] thousands of combinations."  Appx6028 (313:3-22) (Gemeinhart).  *See Purdue*, 230 F.3d at 1326-27.

> **b.    The "preformulation" disclosure does not provide written-description support.**

Second, Allergan cites an even more generic "preformulation" mixture that vaguely includes "one or more pharmaceutical excipients."  Br. 60-61 (citing Appx194 (12:47-54)).  Again, the district court rejected "Allergan's interpretation of this paragraph[,] [which] implies that because the paragraph states the invention in the broadest possible terms, that is, eluxadoline and any possible combination of excipients, the paragraph provides written description for any formulation that is more than pure eluxadoline."  Appx24.  Instead, "[t]his paragraph just outlines the basic idea of mixing eluxadoline with excipients and then subdividing the mixture into dosage amounts in some form."  *Id*.  Expert testimony supports this finding, which is not clearly erroneous.  Appx5942-5943 (227:15-228:15) (Gemeinhart) (characterizing passage as "very general description")).

Allergan argues that because glidants keep formulations homogenous and the specification discloses "a solid preformulation composition containing, in preferred embodiments, a homogeneous mixture," this means a glidant is merely "preferred," and therefore optional.  Br. 61.  But this argument is waived and contradicts Allergan's representation to the district court that the "invention

55

formulation is … the ingredients mixed together homogenously." Appx5751

(36:13-16). Indeed, the next sentence of the specification explains that, by

"'homogeneous,' it is meant that the active ingredient is dispersed evenly

throughout the composition *so that the composition may be readily subdivided into*

*equally effective unit dosage forms such as tablets* or capsules." Appx194 (12:54-

59) (emphasis added). The asserted claims here do not cover *any* composition but

are expressly limited to "tablets." Br. 7-8. Thus, as Allergan admitted, the only

embodiments Allergan *claimed* were "homogenous formulations." Appx4273.

Allergan argues Dr. Gemeinhart "admitted" a glidant is optional in this

"preformulation" section (Br. 61), which mischaracterizes his testimony and

ignores his opinion that "preformulation" refers to an early development phase

where excipients are screened for compatibility with the active ingredient.

Appx6024-6025 (309:18-310:9). Dr. Gemeinhart never admitted a glidant is

"optional" *in the claimed final tablet*.

The patentee in *ICU Medical* made a similar argument, contending "the

specification discloses a preslit [] seal" that a POSA "would recognize" allows the

invention to work without a spike. 558 F.3d at 1378. This Court rejected that

argument because "[i]t is not enough that it would have been obvious to a [POSA]

that a preslit [] seal could be used without a spike." *Id*. at 1379. The district court

here similarly found that "[a]t most, this paragraph may render making a

formulation without a glidant obvious," which "does not satisfy the [written-description] requirement."  Appx24 (citing *Ariad*, 598 F.3d at 1352).

### c. The original claims do not provide written-description support.

Third, Allergan cites claims 1, 5, and 6 in the priority application for the '179 and '516 patents, which generically recited eluxadoline and "*an* inert ingredient selected from" a group including colloidal silica.  Br. 61; Appx11835.  But this argument is waived because Allergan never relied on the original claims for written-description support before the district court.  *Aventis*, 499 F.3d at 1299.  Regardless, this essentially is the same flawed argument as the "Summary of Disclosure" argument addressed above at pages 53-55.

Allergan's argument ignores that the examiner *rejected* the original claims as obvious.  Appx12002-12004.  The patentee never traversed that rejection but instead canceled the claims and replaced them with new claims requiring colloidal silica.  Appx12059-12062.  Thus, the prosecution history confirms that the only alleged invention a POSA would believe the inventors possessed was a formulation with a glidant.  *See also LizardTech, Inc. v. Earth Resource Mapping, Inc.*, 424 F.3d 1336, 1346 (Fed. Cir. 2005) (rejecting patentee's argument that challenged claim was "part of the original disclosure").

Thus, Allergan fails to show any clear, harmful error in the district court's factual findings, which this Court should affirm.

### III.    Multiple alternative grounds support the district court's judgment on the formulation patents.

"Appellees always have the right to assert alternative grounds for affirming the judgment that are supported by the record." *MEHL/Biophile Int'l Corp. v. Milgraum*, 192 F.3d 1362, 1366 (Fed. Cir. 1999).  So long as an alternative ground "would not enlarge the judgment," this Court can affirm based on that ground even if the district court rejected or did not reach it. *Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1023 (Fed. Cir. 2008).  A judgment of invalidity is "a complete defense to infringement for any product, forever," so alternative grounds for affirmance include defenses that are equal or narrower in scope, like "additional claims for invalidity or [] claims of non-infringement." *TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1157 (Fed. Cir. 2004).

### A.    The judgment is independently supported by the inventor's testimony that he did not invent a glidant-free formulation.

Although the district court did not rely on it, the inventor's testimony supports the judgment by showing he did not invent—and thus could not possess or describe—eluxadoline compositions without a glidant.

The first-listed inventor of the formulation patents, and the only inventor Allergan made available, is Dr. Costello (Appx74; Appx184), who "was essentially the director of the development" for Allergan's eluxadoline product and "was involved from the outset" (Appx5772 (57:9-14); Appx5764-5765 (49:25-50:2)).

Dr. Costello admitted he is not "aware of any eluxadoline formulations that [he]

invented but are not included in the claims of the '587 patent" (Appx5797-5798

(82:22-83:3)), an earlier-issued patent whose claims all required colloidal silica

(Appx230-231 (33:62-36:49)).  Dr. Costello further admitted he did not invent

successful eluxadoline compositions without the specific combination of SMCC,

colloidal silica, mannitol, crospovidone, and magnesium stearate (Appx5798

(83:17-20)), and he could not "remember" compositions without colloidal silica at

all (Appx5799 (84:11-13)).

These admissions go to the heart of the written-description requirement,

which "plays a vital role in curtailing claims … that have not been invented, and

thus cannot be described."  *Ariad*, 598 F.3d at 1352.  Dr. Costello, "by definition,

could not have possession of, and disclose, the subject matter of [an invention] that

did not even exist," *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1255 (Fed.

Cir. 2004), because "one cannot describe what one has not conceived," *Fiers v.

Revel*, 984 F.2d 1164, 1171 (Fed. Cir. 1993).  Thus, Dr. Costello's "inventor

testimony … illuminates the absence of critical description in this case," *Nuvo*, 923

F.3d at 1381, which is an independent basis to affirm.  *See New Railhead Mfg.,

L.L.C. v. Vermeer Mfg. Co.*, 298 F.3d 1290, 1295 (Fed. Cir. 2002) (affirming

judgment of no written description that "relied in particular on the admissions in

the deposition testimony of [the inventor]").

**B.    The judgment is independently supported by unclean hands.**

Allergan also has unclean hands in prosecuting and asserting claims after

claim construction to cover Sun's product that the inventor did not invent, which

precludes Allergan from asserting those claims against Sun.  The Court may find

unclean hands whenever a plaintiff's misconduct "has immediate and necessary

relation to the equity that he seeks in respect of the matter in litigation," i.e., "for

such violations of conscience as in some measure affect the equitable relations

between the parties in respect of something brought before the court."  *Keystone*

*Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933).

Sun pleaded an affirmative defense that "Plaintiffs' claims are barred in

whole or in part by the doctrine of unclean hands and bad faith."  Appx3542.

Among other things, Sun alleged "Dr. Tim Costello … confirmed that he never

invented any eluxadoline composition that did not include colloidal silica," yet

"Plaintiffs drafted claims … that do not explicitly require colloidal silica in an

improper attempt to cover Sun's ANDA Product Formulation, which Plaintiffs did

not invent."  Appx3543-3544.

Although Allergan persuaded the district court to strike Sun's affirmative

defense, it never analyzed that defense under the relevant standard.  Instead,

Allergan focused on dismissing Sun's *counterclaim* of unclean hands by arguing it

required Sun to prove a protective-order violation—i.e., misusing confidential

information about Sun's product. Appx16780. The district court agreed with Allergan and not only dismissed Sun's counterclaim, but struck Sun's *affirmative defense* of unclean hands on the same basis, without any substantively different analysis. Appx16783. Striking Sun's affirmative defense on the same basis as its counterclaim was a mistake that contradicted the district court's earlier and unchallenged recognition that "[t]he pleading standard for an affirmative defense is less demanding than that of a claim or counterclaim," and "affirmative defenses 'need not be plausible to survive' under Rule 8(c)." Appx16769. Thus, even assuming Sun's *counterclaim* required proving a protective-order violation, Sun's *affirmative defense* was broader and not limited to those facts.

While Sun's affirmative defense also referenced "confidential information," it separately alleged that the inventor did not invent eluxadoline compositions lacking a glidant (Appx3543), which does not depend on any protective-order violation. And while a patentee is generally free to draft claims covering a competitor's product that the patentee invented, allowing Allergan to assert claims to cover Sun's product that Allergan *knows* the inventor never invented cannot be an equitable result. Thus, Allergan's unclean hands is an independent (and narrower) basis to affirm the judgment—or, at a minimum, for remanding to the district court to substantively consider this defense.

## C.    The district court did not consider Sun's obviousness defense.

Finally, Sun raised an alternative invalidity defense—obviousness—which the district court did not address because it found the claims invalid for lacking written description.  Appx44.  Even if Allergan could show any harmful error (it cannot), the appropriate remedy would be to remand for the district court to consider obviousness.  *See Green Edge Enters., LLC v. Rubber Mulch Etc., LLC*, 620 F.3d 1287, 1298-99 (Fed. Cir. 2010) (remanding where "the district court did not address [defendant's] obviousness assertions").

## CONCLUSION

The judgment should be affirmed.

Respectfully submitted,

/s/ Charles B. Klein

EIMERIC REIG-PLESSIS
Winston & Strawn LLP
101 California Street
San Francisco, CA 94111
(415) 591-1000
ereigplessis@winston.com

CHARLES B. KLEIN
JOVIAL WONG
Winston & Strawn LLP
1901 L Street NW
Washington, DC 20036
(202) 282-5000
cklein@winston.com
jwong@winston.com

*Counsel for Defendant-Appellee Sun Pharmaceutical Industries Limited*

January 29, 2024

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(b)(1) because it contains 13,978 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2).

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in 14-point Times New Roman, a proportionally spaced typeface, using Microsoft Word 2016.


January 29, 2024                         /s/ Charles B. Klein
                                         CHARLES B. KLEIN
                                         Winston & Strawn LLP
                                         1901 L Street NW
                                         Washington, DC 20036
                                         (202) 282-5000
                                         cklein@winston.com