# United States Court of Appeals for the Federal Circuit

---

ALLERGAN USA, INC., ALLERGAN HOLDINGS UNLIMITED CO.,
ALLERGAN PHARMACEUTICALS INTERNATIONAL LTD.,
JANSSEN PHARMACEUTICA NV, EDEN BIODESIGN, LLC,

*Plaintiffs-Appellants,*

– v. –

MSN LABORATORIES PRIVATE LTD., MSN PHARMACEUTICALS, INC.,
SUN PHARMACEUTICAL INDUSTRIES LIMITED,

*Defendants-Appellees.*

---

*On Appeal from the United States District Court for the District
of Delaware in Nos. 1:19-cv-01727-RGA, 1:21-cv-01064-RGA,
1:21-cv-01065-RGA and 1:20-cv-01479-RGA,
Honorable Richard G. Andrews, Judge*

---

## REPLY BRIEF FOR PLAINTIFFS-APPELLANTS

LISA B. PENSABENE
HASSEN A. SAYEED
JAMES Y. LI
O'MELVENY & MYERS LLP
Times Square Tower
Seven Times Square
New York, NY 10036
(212) 326-2000
lpensabene@omm.com
hsayeed@omm.com
jli@omm.com

ERIC W. DITTMANN
MELANIE R. RUPERT
PETER E. CONWAY
PAUL HASTINGS LLP
200 Park Avenue
New York, NY 10166
(212) 318-6000
ericdittmann@paulhastings.com
melanierupert@paulhastings.com
peterconway@paulhastings.com

STEPHEN B. KINNAIRD
PAUL HASTINGS LLP
2050 M Street NW
Washington, DC 20036
(202) 551-1700
stephenkinnaird@paulhastings.com

*Counsel for Plaintiffs-Appellants*

FEBRUARY 20, 2024



## <u>CERTIFICATE OF INTEREST</u>

Counsel for Allergan USA, Inc., Allergan Holdings Unlimited Co., Allergan Pharmaceuticals International Ltd., Janssen Pharmaceutica NV, and Eden Biodesign, LLC certifies the following:

| 1. Provide the full names of all entities represented by undersigned counsel in this case. | 2. Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. | 3. Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. |
|---|---|---|
| Allergan USA, Inc., Allergan Holdings Unlimited Co., Allergan Pharmaceuticals International Ltd., Janssen Pharmaceutica NV, and Eden Biodesign, LLC | AbbVie Inc. as real party in interest for Allergan Holdings Unlimited Co. with respect to New Drug Application No. 206940 for Viberzi® brand eluxadoline tablets | AbbVie Inc. (for Allergan USA, Inc., Allergan Holdings Unlimited Co., Allergan Pharmaceuticals International Ltd., and Eden Biodesign, LLC)<br><br>Johnson & Johnson (for Janssen Pharmaceutica NV) |

1.     The names of all law firms and the partners or associates that appeared for the party now represented for the entities in the originating court or agency or are expected to appear in this Court (and who have not or will not enter an appearance in this case) are:

> MORRIS, NICHOLS, ARSHT & TUNNELL LLP:  Jack B. Blumenfeld, Jeremy A. Tigan

> O'MELVENY & MYERS LLP:  Daniel O'Boyle, Carolyn S. Wall, Mark A. Hayden, Amy Jing Ying Zhao

> QUINN EMANUEL URQUHART & SULLIVAN, LLP:  Peter J. Armenio, P.C., Anne S. Toker, Colleen Tracy James, Sky C. Adams, Allyson E. Parks, Amanda K. Antons

> BAKER & HOSTETLER: Jeffrey J. Lyons

2.    The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. *See* Fed. Cir. R. 47.4(a)(5) and 47.5(b).

    None

3.    Information required by Federal Rule of Appellate Procedure 26.1(b) and (c) that identifies organizational victims in criminal cases and debtors and trustees in bankruptcy cases.

    Not Applicable

    Respectfully submitted,

Dated:  February 20, 2024    /s/ Eric W. Dittmann
    Eric W. Dittmann
    PAUL HASTINGS LLP
    200 Park Avenue
    New York, NY 10166
    (212) 318-6000
    ericdittmann@paulhastings.com

    *Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................1

ARGUMENT ........................................................................3

I.   OBVIOUSNESS-TYPE DOUBLE PATENTING DOES NOT JUSTIFY TRUNCATING THE TERM OF A FIRST-FILED, FIRST-ISSUED PATENT BASED ON ITS OWN PROGENY .........3

    A.   ODP Prevents Only Extensions Beyond the Original Patent Term ...............................3

    B.   Sun's Rule Is Inconsistent with *Gilead* and *AbbVie* .................6

    C.   ODP Cannot Be Invoked to Truncate the Statutorily Mandated Term of a First-Filed, First-Issued Patent ...............12

    D.   Sun's Rule Violates Section 154 and the Separation of Powers....................................14

    E.   *Cellect* Did Not Resolve Whether Later-Filed Patents Can Serve as ODP Reference Patents with Respect to First-Filed, First-Issued Patents ...............................16

    F.   Equity Does Not Permit Deprivation of the Original Exclusivity Period Based on Later-Filed Family Members ...................................20

II.  THE DISTRICT COURT ERRED IN FINDING LACK OF WRITTEN DESCRIPTION ...............................................22

    A.   Claim 26 Recites No Limitation Concerning Glidants............22

    B.   The District Court Erred in Redefining the Invention to Have Functional Requirements Based on Extrinsic Evidence ...........................24

    C.   Sun Has Not Shown That the Specification Fails to Disclose Formulations Without a Glidant .................28

III. SUN'S "ALTERNATIVE GROUNDS" FOR AFFIRMING THE JUDGMENT ALL FAIL....................................30

    A.   The Inventor Testimony Sun Offers Is Immaterial and Mischaracterized.........................................30

**TABLE OF CONTENTS**
(continued)

**Page**

B.    Sun's Unclean Hands Affirmative Defense
Does Not Provide an Alternative Basis for Judgment .............32

CONCLUSION ........................................................................................33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AbbVie Inc. v. Mathilda & Terence Kennedy Inst. of Rheumatology Tr.*,
    764 F.3d 1366 (Fed. Cir. 2014) ................................................................*passim*

*Acadia Pharms. Inc. v. Aurobindo Pharma Ltd.*,
    No. 20-985-GBW, 2023 WL 8622048 (D. Del. Dec. 13, 2023) ...................6, 11

*Alcon Research Ltd. v. Barr Lab'ys, Inc.*,
    745 F.3d 1180 (Fed. Cir. 2014) ....................................................................25, 29

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
    598 F.3d 1336 (Fed. Cir. 2010) ..........................................................................30

*In re Braat*,
    937 F.2d 589 (Fed. Cir. 1991) ............................................................................21

*In re Cellect*,
    81 F.4th 1216 (Fed. Cir. 2023) ..................................................................*passim*

*Cooper Cameron Corp. v. Kvaerner Oilfield Prods., Inc.*,
    291 F.3d 1317 (Fed. Cir. 2002) ..........................................................................25

*Cordis Corp. v. Medtronic AVE, Inc.*,
    339 F.3d 1352 (Fed. Cir. 2003) ..........................................................................23

*In re Fallaux*,
    564 F.3d 1313 (Fed. Cir. 2009) ..........................................................................17

*Genentech, Inc. v. Chiron Corp.*,
    112 F.3d 495 (Fed. Cir. 1997) ............................................................................23

*Gilead Sciences, Inc. v. Natco Pharma Ltd.*,
    753 F.3d 1208 (Fed. Cir. 2014) ................................................................*passim*

*ICU Med., Inc. v. Alaris Med. Sys., Inc.*,
    558 F.3d 1368 (Fed. Cir. 2009) ....................................................................23, 26

*Immunex Corp. v. Sandoz Inc.*,
    964 F.3d 1049 (Fed. Cir. 2020) ..........................................................................20

v

*Lockwood v. Am. Airlines, Inc.*,
  107 F.3d 1565 (Fed. Cir. 1997) .........................................................................23

*Microsoft Corp. v. I4I Ltd. P'ship*,
  564 U.S. 91 (2011).............................................................................................5

*Miller v. Eagle Mfg. Co.*,
  151 U.S. 186 (1894)...........................................................................................4

*Novartis AG v. Ezra Ventures LLC*,
  909 F.3d 1367 (Fed. Cir. 2018) ....................................................................5, 10

*Novartis Pharm. Corp. v. Accord Healthcare, Inc.*,
  21 F.4th 1362 (Fed. Cir. 2022) .......................................................................27

*Novartis Pharms. Corp. v. Breckenridge Pharm. Inc.*,
  909 F.3d 1355 (Fed. Cir. 2018) .................................................................*passim*

*Nuvo Pharms. (Ireland) Designated Activity Co. v. Dr. Reddy's Lab'ys Inc.*,
  923 F.3d 1368 (Fed. Cir. 2019) ..................................................................27, 30

*Odiorne v. Amesbury Nail Factory*,
  18 F. Cas. 578 (C.C.D. Mass. 1819).................................................................4

*Pfizer, Inc. v. Lee*,
  811 F.3d 466 (Fed. Cir. 2016) .........................................................................28

*In re Rasmussen*,
  650 F.2d 1212 (C.C.P.A. 1981) .......................................................................26

*Return Mail, Inc. v. Postal Service*,
  139 S. Ct. 1853 (2019)........................................................................................5

*SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*,
  580 U.S. 328 (2017)..........................................................................................14

*Tronzo v. Biomet, Inc.*,
  156 F.3d 1154 (Fed. Cir. 1998) ..................................................................26, 27

*TypeRight Keyboard Corp. v. Microsoft Corp.*,
  374 F.3d 1151 (Fed. Cir. 2004) .......................................................................33

*United States v. L.A. Tucker Truck Lines*,
  344 U.S. 33 (1952) ............................................................................17

*United States v. Mitchell*,
  271 U.S. 9 (1926) .............................................................................17

*United States v. Schneider*,
  594 F.3d 1219 (10th Cir. 2010) ......................................................32

*Univ. of S. Fla. Rsch. Found., Inc. v. Fujifilm Med. Sys. U.S.A., Inc.*,
  19 F.4th 1315 (Fed. Cir. 2021) .......................................................30

*Yee v. City of Escondido*,
  503 U.S. 519 (1992) .........................................................................28

**Statutes**

35 U.S.C. § 101 .....................................................................................14

35 U.S.C. § 102(c) ...........................................................................10, 11

35 U.S.C. § 112 ...............................................................................25, 30

35 U.S.C. § 154(a) ..........................................................................12, 15

35 U.S.C. § 154(b) .............................................................10, 15, 16, 21

1994 Uruguay Round Agreement Act,
  Pub. L. No. 103-465, 532(a), § 532(a), 108 Stat. 4809 (1994) ...................*passim*

The Cooperative Research and Technology Enhancement (CREATE)
  Act of 2004, Pub. L. No. 108-453, 118 Stat. 3596 (2004) ...........11, 12

The Patent Act,
  Pub. L. No. 82-593, 66 Stat. 792 (1952) .......................................1, 14

**Other Authorities**

150 Cong. Rec. S7521 (daily ed. June 25, 2004) (statement of Sen. Hatch) ..........11

## <u>TABLE OF ABBREVIATIONS</u>

| | |
|---|---|
| '356 patent | U.S. Patent No. 7,741,356 (Appx14407-14485) |
| '011 patent | U.S. Patent No. 8,344,011 |
| '709 patent | U.S. Patent No. 8,609,709 |
| '516 patent | U.S. Patent No. 11,311,516 (Appx183-209) |
| PBr. | Plaintiffs' Brief |
| SBr. | Sun's Brief |
| Allergan or Plaintiffs | Plaintiffs-Appellants Allergan USA, Inc., Allergan Holdings Unlimited Co., Allergan Pharmaceuticals International Ltd., Janssen Pharmaceutica NV, and Eden Biodesign, LLC |
| Sun | Defendant-Appellee Sun Pharmaceutical Industries Limited |
| ODP | obviousness-type double patenting |
| POSA | person of ordinary skill in the art |
| PTA | patent term adjustment under 35 U.S.C. § 154(b) |
| PTAB | Patent and Trial Appeal Board |
| PTO | U.S. Patent and Trademark Office |
| 2004 CREATE Act | Cooperative Research and Technology Enhancement Act of 2004 |
| Patent Act | Patent Act of 1952, codified in Title 35 of the U.S. Code |
| URAA | Uruguay Round Agreement Act |
| Section 112 | 35 U.S.C. § 112 |

## INTRODUCTION

Sun proposes that this Court convert the equitable ODP doctrine into a "simple" mechanical rule that turns solely on comparing patent expiration dates. SBr. 19-21. But Sun's proposed rule ignores the critical threshold question of what qualifies as an ODP reference patent. And it asks this Court to affirm the first-ever decision invalidating an original, first-filed, first-issued patent under ODP based on later-filed, later-issued, earlier-expiring continuation patents. Doing so would contravene this Court's precedents, the Patent Act, and the separation of powers.

Sun purports to derive its mechanical rule from *Gilead Sciences, Inc. v. Natco Pharma Ltd.*, 753 F.3d 1208 (Fed. Cir. 2014), and *AbbVie Inc. v. Mathilda & Terence Kennedy Institute of Rheumatology Trust*, 764 F.3d 1366 (Fed. Cir. 2014). *Gilead* and *AbbVie*, however, merely reflect that ODP prevents any unjust extension of an *original* patent monopoly period, and that later-filed, later-expiring patents with patentably indistinct claims unjustly extend that original term. Neither decision supports applying ODP to shorten the original term of the first-filed, first-issued patent in a family, as the district court did here. Nor does *In re Cellect*, 81 F.4th 1216 (Fed. Cir. 2023), which resolved entirely different issues and did not address what constitutes a proper ODP reference patent. A judicial decision is precedential only with respect to issues it decides.

The awarded term of an original patent for an invention defines the exclusivity period for that invention. This term represents the inventor's bargain with the public, and establishes when the public will be free to use the patented invention. Permitting a later-filed, later-issued, earlier-expiring continuation patent to serve as an ODP reference against the original patent, as Sun suggests, runs contrary to this purpose. Instead of preventing unjustified timewise *extensions*, doing so impermissibly *truncates* the original exclusivity period for an invention. This is not the purpose of ODP, and the applicable rule of law is clear: A later-filed patent is not a proper ODP reference patent for the first-filed, first-issued patent in the family. Given the statutorily guaranteed 20-year term from an original patent's effective filing date, with mandated adjustments for PTO delay, ODP does not justify shortening the '356 patent's term to 14 years, 8 months, and 20 days.

Sun also fails to refute Plaintiffs' showing that the district court's written-description rulings should be reversed for claim construction error, the addition of functional requirements to the invention based on extrinsic evidence, and lack of substantial evidence. Sun's proffered alternative grounds also provide no basis to affirm the judgment, which this Court should reverse.

## **ARGUMENT**

I. **OBVIOUSNESS-TYPE DOUBLE PATENTING DOES NOT JUSTIFY TRUNCATING THE TERM OF A FIRST-FILED, FIRST-ISSUED PATENT BASED ON ITS OWN PROGENY**

Sun advances what it deems to be a "simple" general ODP "test":  "'If the later[-]expiring patent is merely an obvious variation of an invention disclosed and claimed *in the reference patent*, the later[-]expiring patent is invalid for [ODP].'" SBr. 19 (quoting *AbbVie*, 764 F.3d at 1379).  According to Sun, this test is subject only to two "narrow exceptions," and applies even if (as here) it truncates the original, statutorily guaranteed term of a first-filed, first-issued patent based on subsequent, earlier-expiring continuation patents from the same family. SBr. 19-21.  Sun ignores, however, the critical threshold question of what qualifies as an ODP reference patent.  No ODP precedent or policy supports Sun's test or the inequitable result it yields here.

### A. **ODP Prevents Only Extensions Beyond the Original Patent Term**

"The key purpose of obviousness-type double patenting is to prevent a patent owner from extending the exclusivity rights over his invention *beyond a full patent term*."  *Novartis Pharms. Corp. v. Breckenridge Pharm. Inc.*, 909 F.3d

3

1355, 1367 (Fed. Cir. 2018) ("*Breckenridge*").[1]  The original patent to an invention represents the inventor's bargain with the public, and ODP "ensures that the public gets the benefit of the invention after the *original period of monopoly* expires." *AbbVie*, 764 F.3d at 1373.[2]

By definition, the first-filed, first-issued patent to an invention does not extend the term of any other patent to that invention.  The term of the original patent is "the original period of monopoly" for the invention that serves as the benchmark for assessing potential ODP.  *See id*.  The original patent does not, and cannot, extend the term of a child patent.

Sun's rule—whereby a subsequent, earlier-expiring continuation patent invalidates the properly issued original patent from that family—also contravenes the basic principle that a patent's invalidity is determined at the time of issuance.

---

[1] Unless otherwise noted, all internal citations, alterations, and quotations have been omitted, and all emphasis has been added.

[2] Sun claims that its ODP test is consistent with statutory double patenting, SBr. 15, but the rationale for any form of double patenting is that "the power to create a monopoly is exhausted by the first patent, and for the further reason that a new and later patent for the same invention would operate to extend or prolong the monopoly beyond the period allowed by law," *Miller v. Eagle Mfg. Co.*, 151 U.S. 186, 198 (1894) (citing *Odiorne v. Amesbury Nail Factory*, 18 F. Cas. 578 (C.C.D. Mass. 1819) (Story, J.)).  Although the rules for determining the original exclusivity period have changed post-URAA, *Gilead*, 753 F.3d at 1214-15, ODP's purpose remains preserving the public's "'right to use the invention at the expiration of the term *specified in the original grant*.'"  *AbbVie*, 764 F.3d at 1372 (quoting *Odiorne*, 18 F. Cas. at 579).

4

The PTO must ensure the validity of a patent before issuing it.  *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95-96 (2011).  Accordingly, when a defendant is sued in district court, it may invalidate the patent only "by clear and convincing evidence that the patent never should have issued in the first place."  *Return Mail, Inc. v. Postal Service*, 139 S. Ct. 1853, 1859 (2019).  Because a patent must be shown to be invalid *ab initio*, a first-filed, first-issued patent that is valid when issued does not become invalid based on subsequent events, including the issuance of an earlier-expiring continuation patent.  *See* PBr. 34-37; *Breckenridge* at 1366 ("When the [earlier-filed] patent issued, the [later-filed] patent had not yet issued and thus did not exist as a[n ODP] reference").  This is why only "later-filed patents" that "extend exclusive rights" implicate the "traditional concern with [ODP]."  *Novartis AG v. Ezra Ventures LLC*, 909 F.3d 1367, 1374 (Fed. Cir. 2018) ("*Ezra*").

Sun's retroactive ODP rule also severs the link between ODP and terminal disclaimers.  *Cf. Cellect*, 81 F.4th at 1228 (explaining that ODP and terminal disclaimers are "two sides of the same coin").  The first-filed, first-issued patent cannot be disclaimed at issuance to a nonexistent alleged ODP reference.  Sun claims that a terminal disclaimer can be filed later, SBr. 30, but that is immaterial.  The point is that a first-filed, first-issued patent is not invalid from inception

because its issuance does not and cannot extend the term of a nonexistent patent. Indeed, no court before the district court here has ever held that the first-filed, first-issued patent in a family is invalid for ODP because a later-filed continuation patent expires first.

### B.     Sun's Rule Is Inconsistent with *Gilead* and *AbbVie*

Even though its proposed mechanical test has no moorings in equity or this Court's precedents, Sun maintains that *Gilead* and *AbbVie* compel it.  SBr. 18-19. But Sun never acknowledges that *Gilead* and *AbbVie* held only that *earlier*-filed patents, claiming an earlier priority date, can serve as reference patents for *later-filed*, *later-expiring* patents.  That is not the case here.  *Gilead* and *AbbVie* establish that, post-URAA, ODP does not permit earlier-filed patents to be *extended* by later-expiring patents with patently indistinct claims.  These cases do not compel the rule Sun espouses.  *See Acadia Pharms. Inc. v. Aurobindo Pharma Ltd.*, No. 20-985-GBW, 2023 WL 8622048, at *8 (D. Del. Dec. 13, 2023) (discussed at PBr. 25, 31-34).

In *Gilead*, the patentee "crafted a separate 'chain' of applications" having different priority dates.  753 F.3d at 1210.  Importantly, the later-filed patent in the second chain (the '483 patent) issued first, but expired later:



*Id.* at 1210-11, 1214.  The district court found no ODP on the ground that the

'375 patent was not a proper reference patent for the '483 patent because the

'375 patent issued later.  *Id.* at 1209-10.

This Court disagreed.  It explained that, under the URAA, the earliest

effective filing (or priority) date of an invention limits the original exclusivity

period for that invention:  "In the URAA, Congress clearly *limited the one period*

*of exclusivity* an inventor can obtain for each of his inventions to twenty years *from*

*the filing date of the earliest application* to which the inventor claims priority—

with some limited exceptions."  *Id.* at 1215.  That is why, in discussing the Manual

of Patent Examining and Procedure, this Court relied on the PTO's instruction that,

"where two pending patent applications filed by the same inventor are subject to

provisional [ODP] rejections over each other … a terminal disclaimer is required

for the *later of the two applications* (which the hypothetical anticipates to have the

7

later expiration date) before that application can issue." *Id.* at 1216-17. Sun tellingly ignores this portion of *Gilead* discussed in Plaintiffs' brief. PBr. 24, 34.

*Gilead* did not abandon traditional ODP equitable principles, but rather adapted them to the URAA. In keeping with "the principles [of] our prior case law," this Court explained that a patent issuing from "the earliest application," 753 F.3d at 1215, "qualifies as an [ODP] reference" with respect to a later-expiring patent "having a later priority date," *id.* at 1210. Thus, in *Gilead*, the earliest-filed patent was a proper reference patent because it defined the "one period of exclusivity" to the invention. *Id.* at 1215. The later-filed patent, even though first-issued, "extend[ed] the inventors' term of exclusivity on obvious variants of the invention claimed in the '375 patent." *Id.* at 1214.

Not only does Sun fail to heed *Gilead*'s facts and reasoning, it also ignores the express limitation of its holding: "We therefore hold that an earlier-expiring patent *can* qualify as an [ODP] reference for a later-expiring patent *under the circumstances here.*" *Id.* at 1217, 1211-12. *Gilead* does not support Sun's general rule.

Sun's single-paragraph treatment of *AbbVie*, SBr. 18-19, is of the same ilk. Sun attempts to convert a quotation regarding the comparison of expiration dates into a near-universal "simple" test, while ignoring *AbbVie*'s facts and reasoning:

8

"'If the later expiring patent is merely an obvious variation of an invention disclosed and claimed in the reference patent, the later expiring patent is invalid for ODP.'" SBr. 19 (quoting *AbbVie*, 764 F.3d at 1379). But Sun overlooks that *AbbVie*'s "reference patent" was an earlier-filed patent, just like in *Gilead*, and unlike the present appeal.

In *AbbVie*, the applicant filed a later patent "that claimed a later priority date" so that it would expire after the first-filed patent:



764 F.3d at 1369-70, 1373 & n.2. The *AbbVie* Court declared that ODP "ensures that the public gets the benefit of the invention after the *original period of monopoly* expires," which, as in *Gilead*, was established by the earlier-filed patent. *Id.* at 1373 ("[When] the applicant chooses to file separate applications for overlapping subject matter and to claim different priority dates for the applications," thus resulting in different expiration dates, ODP bars "an undue patent term extension."). As in *Gilead*, the earlier-filed patent (the '766 patent) establishing an original exclusivity period was the reference patent, and a

subsequent patent that expired later because of a different priority date (the '442 patent) unduly extended that original term. *Id.*

*Gilead* and *AbbVie* do not support Sun. The '356 patent is the first-filed, first-issued patent covering eluxadoline. By definition, it sets the original period of exclusivity for that invention. *See id.*; *Gilead*, 753 F.3d at 1215. By statute, that exclusivity period is not determined solely by the 20-year period following the earliest priority application, as Congress also mandated term adjustment upon patent issuance to offset PTO delay. *See* 35 U.S.C. § 154(b)(1), (2) (requiring additional term "if the issue of an original patent is delayed" by the PTO). Sun's purported reference patents are the later-filed, later-issued, and earlier-expiring '011 and '709 continuation patents. Neither continuation patent establishes an original exclusivity period for the invention, as they share a common priority date with the '356 patent, and thus neither patent can serve as a proper ODP reference under *Gilead* or *AbbVie*.[3]

---

[3] *Gilead* recognized that the original exclusivity period could be affected by other factors besides priority, such as statutory term extensions like PTAs, but did not address them because they were not relevant to the disputed issues. *See* 753 F.3d at 1215 & n.6; *Ezra*, 909 F.3d at 1375 n.2; *Cellect*, 81 F.4th at 1227 (noting that it was the first case to address PTAs).

In short, the '356 patent simply does not extend the term of either the

'011 patent or the '709 patent.  As one district court aptly observed in rejecting the

district court's analysis here:

> If a later-filed patent is used as a reference, the logic and
> purpose of [ODP] is flipped on its head: rather than
> preventing a patent owner from unjustifiably extending the
> term of a patent, [ODP] would operate to cut off a patent
> term that would have been valid but for a later-filed patent.

*Acadia*, 2023 WL 8622048, at *7.

Indeed, the legislative history of 2004 CREATE Act, which has the force

and effect of law in administering joint research agreements under 35 U.S.C.

§ 102(c), PBr. 42 & n.9, declares that "[t]he double patenting doctrine can

invalidate claims in any *later or concurrently issued patent* if those claims are

determined to represent double patenting *with respect to any of the claims in a*

*first-issued patent*."  150 Cong. Rec. S7521 (daily ed. June 25, 2004) (statement of

Sen. Hatch).  Sun advances a novel rule that contravenes what both Congress and

this Court have embraced.  Sun's only response to this legislation, which it

relegates to a footnote, is that the above-quoted statement pertains only to

Section 102(c).  SBr. 34 n.1.  But Congress was not creating a *sui generis* ODP

rule for Section 102(c).  150 Cong. Rec. S7521 ("[T]he current principles

11

governing double patenting should be applied to all such situations involving the issuance of double patents where the provisions of the CREATE Act apply.").[4]

Sun's attempt to characterize the later-filed, later-issued '011 and '709 continuation patents as defining the "'first' and 'original' term" of exclusivity, SBr. 28, is doublespeak.  Those patents define no term of exclusivity to eluxadoline that preceded the filing or grant of the '356 patent.  Accordingly, those patents are not proper ODP reference patents.  That is all that this Court needs to resolve to dispose of Sun's ODP challenge in this case.

### C.    ODP Cannot Be Invoked to Truncate the Statutorily Mandated Term of a First-Filed, First-Issued Patent

Sun also cannot reconcile its position with a third precedent, *Breckenridge.* There, this Court rejected the claim that ODP can be determined solely by comparing expiration dates, when (as here) the original statutory period of exclusivity would be truncated.  909 F.3d at 1364-66.  While addressing a different

---

[4] Plaintiffs are not seeking to restore the pre-URAA issuance-date rule that *Gilead* rejected, as Sun claims.  SBr. 18, 28.  Under the analysis in *Gilead* and *AbbVie*, the question is whether the '356 patent improperly extends an earlier period of exclusivity to eluxadoline.  As the first-filed, first-issued patent to the invention, the answer is "no."  Inventors have a right to file continuation patents, which often have shorter terms because (i) they are filed later in the 20-year period from the priority date and (ii) their examinations may not be delayed, as they involve claims similar to those in the original patent.  *See* 35 U.S.C. § 154(a)(2); PBr. 34-37.  But the full, original patent protection is not thereby sacrificed.

question (*i.e.*, whether ODP invalidates a pre-URAA patent that expires after a post-URAA patent), the reasoning of *Breckenridge* squarely refutes Sun's position, and Sun cannot paint that decision as a mere "exception" to its proposed mechanical rule.  SBr. 18-19.

    *Breckenridge* applied the same core principles "laid out" in *Gilead*. 909 F.3d at 1362.  This Court explained that "[p]rohibiting double patenting prevents a patentee from obtaining *sequential patents* on the same invention and obvious variants, to thereby effectively manufacture a timewise extension of its patent exclusivity through a later-expiring patent." *Id.*  In the first-filed, first-issued patent in *Breckenridge*, the patentee had not "improperly captured unjustified patent term." *Id.* at 1364.  The later-filed, later-issued "patent [wa]s not a proper [ODP] reference" because, as here, it did not establish an original exclusivity period that was extended by the challenged patent. *Id.* at 1366.

    The *Breckenridge* Court noted that simply comparing expiration dates in that context would improperly "truncate the term statutorily assigned to the [earlier-filed, earlier-issued] patent." *Id.* at 1358, 1366.  "The key purpose of" ODP, this Court observed, "is to prevent a patent owner from *extending* the exclusivity rights over his invention *beyond a full patent term*." *Id.* at 1367. Unlike the patentees in *Gilead* and *AbbVie*, who filed later applications claiming

13

later priority dates to "extend the life of patent exclusivity … [h]ere, critically, [the patentee] did not seek to extend its patent rights over its … invention beyond one patent term." *Id.*  "To find that [ODP] applies here because a post-URAA patent expires earlier would abrogate [the patentee's] right to enjoy *one full* patent term on its invention." *Id.*

Sun argues that this anti-truncation principle applies only if there is an intervening change in patent term law, *i.e.*, the circumstance in *Breckenridge*. SBr. 33.  That misunderstands *Breckenridge*'s reasoning, which explains that ODP is designed to prevent unjust extensions of the "full" original exclusivity period to an invention, rather than shortening that original grant of exclusivity.  909 F.3d at 1367.  Being first-filed and first-issued, the '356 patent extends no other patent term in the family, and thus there is no ODP issue.

### D.     Sun's Rule Violates Section 154 and the Separation of Powers

Not only is Sun's test inconsistent with ODP principles, but under the separation of powers, an equitable judge-made doctrine cannot abrogate statutory rights.  PBr. 43-44; *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 580 U.S. 328, 334-35 (2017).  Sun counters that ODP always restricts the statutory term of the challenged patent, SBr. 33, but misses the point.  The Patent Act provides that an inventor may obtain "a patent" to an invention, 35 U.S.C. § 101, and thus does not guarantee a full patent term for a later patent with

14

patentably indistinct claims.  PBr. 20-21; *supra* at 4 n.2.  But the Act does grant the applicant a 20-year term from the effective filing date, with adjustments for any PTO delay.  35 U.S.C. § 154(a)(2), (b)(1).  The district court impermissibly limited what Sun concedes to be an innovation (*i.e.*, eluxadoline) in derogation of statutorily guaranteed rights by finding the original '356 patent invalid for ODP.

Sun's rule is also inconsistent with the statute governing terminal disclaimers for patents with PTAs, 35 U.S.C. § 154(b)(2)(B).  Because ODP and terminal disclaimers are "two sides of the same coin," Section 154(b)(2)(B) illustrates the operation of ODP intended by Congress.  *Cellect*, 81 F.4th at 1228.  In 1999, in expanding PTAs for PTO delay and guaranteeing diligent applicants a minimum 17-year term, PBr. 22-23, Congress provided that "[n]o patent the term of which *has been disclaimed beyond a specified date* may be adjusted under this section beyond the expiration date specified in the disclaimer."  35 U.S.C. § 154(b)(2)(B).  The term "has been disclaimed" (past tense) requires that the disclaimer must already have been made before issuance to bar a PTA for that patent, and "beyond a specified date" requires a disclaimer to the expiration date of an already-issued ODP reference patent.  *See Cellect*, 81 F.4th at 1228-29 ("Congress intended that, when a terminal disclaimer *has been entered in a* patent subject to PTA, no patent (or claim) may be extended beyond the disclaimed

15

expiration date.").  Parent patents cannot be disclaimed to future child patents that have yet to be filed, *Breckenridge*, 909 F.3d at 1366, and need not be terminally disclaimed to pending child patents (which do not have determinate expiration dates because of the potential for PTO or applicant delay), *Gilead*, 753 F.3d at 1216-17.  Section 154(b)(2)(B) reflects Congress's choice as to when ODP can cut short PTAs.  Plaintiffs' position that a first-filed, first-issued patent is not subject to ODP based on a child patent is fully consistent with, and confirmed by, that statutory provision.  Sun's proposed rule would impermissibly override the legislative design of Section 154.  PBr. 43-44.

### E.  *Cellect* Did Not Resolve Whether Later-Filed Patents Can Serve as ODP Reference Patents with Respect to First-Filed, First-Issued Patents

Sun wrongly argues that *Cellect* forecloses Plaintiffs' arguments.  SBr. 34. *Cellect* merely holds that Congress did not categorically foreclose applying ODP to limit a PTA.  81 F.4th at 1227-28.  *Cellect* does not go any further, as Sun suggests.  And nowhere does *Cellect* require that ODP deny a patentee the statutorily guaranteed minimum exclusivity term for a patentable invention awarded in the first-filed, first issued patent, as the district court did here.

The district court also misread *Cellect* to establish a rigid rule that ODP always invalidates patentably indistinct claims in a later-expiring patent. Appx45-46.  As Plaintiffs demonstrated, *Cellect* did no such thing.  PBr. 26-31.

16

The patentee in *Cellect* raised (and this Court decided) only two challenges to the ODP rulings of the PTAB; neither challenge concerned what patents can serve as ODP references.  PBr. 27-28.  The patentee thus waived any reference-patent challenge.  PBr. 28; *In re Fallaux*, 564 F.3d 1313, 1315 n.1 (Fed. Cir. 2009).

Sun spills much ink establishing that the *Cellect* patentee had contested the reference patents before the PTAB, and that the PTAB had rejected certain of those challenges.  SBr. 22-24.  Sun also includes a graphic showing that, in one (but not all) of the cases, the reference patent in *Cellect* was later-filed and later-issued than the invalidated patent.  SBr. 25.  But what was decided only by the PTAB is immaterial.  The question is the precedential force of *this Court's* ruling in *Cellect*, which did not address any reference-patent challenge—much less whether a later-filed, later-issued patent can serve as a reference patent to the first-filed, first-issued patent (in *Cellect*, the '255 patent).  PBr. 26-27.[5]  A judicial decision "is not a binding precedent on [a] point" that is "not … raised in briefs or argument nor discussed in the opinion of the Court."  *United States v. L.A. Tucker Truck Lines*, 344 U.S. 33, 38 (1952); *United States v. Mitchell*, 271 U.S. 9, 14 (1926) ("A question not raised by counsel or discussed in the opinion of the court" has not

---

[5] Sun ignores the PTO Director's statement that *Cellect* did not decide any question of ODP challenges to parent patents.  PBr. 27.

17

"been decided merely because it existed in the record and might have been raised and considered.").

Sun cannot reconcile its theory with *Cellect*'s statement that unasserted claims are subject to ODP if they are "later-filed obvious variations of earlier-filed, commonly owned claims," PBr. 28, and so characterizes it as dictum, SBr. 31.  But any statement in *Cellect* concerning reference patents—whether they must be later-filed or merely later-expiring—are dicta, as *Cellect* did not decide any questions about reference patents (because they were never raised on appeal).

Sun incorrectly argues in the alternative that the term "later-filed" in the above-quoted statement necessarily refers to the priority date, and does not suggest that later-filed patents are precluded from being reference patents.  SBr. 31-32.  But *Cellect* means what it says.  None of the invalidated patents in *Cellect* had a later priority date—each had the same October 6, 1997 priority date as the first-filed, first-issued '255 patent.

18



See 81 F.4th at 1219-20. And likewise here, the '356 patent does not have a later priority date than the alleged ODP reference patents. *Cellect*'s recognition that only later-filed, patently indistinct patents present ODP problems is flatly inconsistent with Sun's proposed rule.

Finally, Sun argues that the above statement from *Cellect* cannot mean what it says because this "would conflict with *Gilead*'s holding that the only 'date that really matters' is 'patent expiration.'" SBr. 32 (quoting *Gilead*, 753 F.3d at 1215). But as explained in detail above, this argument only further exposes Sun's misreading of *Gilead*. There, this Court held that an earlier-filed post-URAA patent established the exclusivity period for an invention, and thus was a proper ODP reference patent for a later-filed, later-expiring patent. *Gilead* nowhere states or suggests the inverse—that a later-filed, earlier-expiring patent is a proper ODP

reference patent against the first-filed, first-issued patent in the family, which is an unsound proposition. *Supra* at 6-10.

Sun also cannot square its position with *Cellect*'s statement that ODP "limits the term of a patent or, at least, ties later-filed, commonly owned, obvious variations to the expiration date *of an earlier-filed reference patent*." 81 F.4th at 1226. Sun argues that "at least" somehow means that ODP could also limit the term of an earlier-filed patent to a later-filed patent's expiration date. SBr. 32. The term "at least," however, simply conveys that a later-filed patent could be tied to the same expiration date of an earlier-filed patent, even if that did not entail a reduction in term. Sun's gloss—that ODP applies regardless of the relative filing dates—renders this statement meaningless.

Ultimately, the present question on appeal was neither raised nor addressed in *Cellect*. Sun and the district court cannot derive a binding rule from *Cellect* that this Court never declared.

### F.    Equity Does Not Permit Deprivation of the Original Exclusivity Period Based on Later-Filed Family Members

ODP is an "equitable doctrine," *Immunex Corp. v. Sandoz Inc.*, 964 F.3d 1049, 1059 (Fed. Cir. 2020), but Sun would wholly sever ODP from its equitable roots in favor of its mechanical (and inequitable) expiration-dates rule.

Sun wrongly maintains that *Cellect* bars equitable considerations.  SBr. 35.

This Court, however, held only that a patentee's good faith and lack of

gamesmanship during prosecution are "not sufficient to overcome a finding that it

has received an unjust timewise extension of term."  *Cellect*, 81 F.4th at 1230.

Absent an extension of the original term of exclusivity, there is no ground for

equitable intervention.  *Gilead*, *AbbVie*, and *Breckenridge* all reaffirm that

equitable principle.  Because the continuation patents at issue here are not proper

reference patents, there is no extension at all, let alone an unjust one.

Equity does not permit shortening the full statutory term of the '356 patent,

which includes a PTA to account for PTO delay.  PBr. 5, 44-46.[6]  That patent

represents the original term of exclusivity for "a patent" to the eluxadoline

invention, and the bargain struck with the public as to when eluxadoline would

enter the public domain.

---

[6] Sun misunderstands Plaintiffs' invocation of *In re Braat*, 937 F.2d 589 (Fed. Cir. 1991).  SBr. 36-37.  Plaintiffs do not seek to apply *Braat*'s two-way test.  PBr. 41. Rather, Plaintiff relies on *Braat* for the equitable principle that a patentee "should not be penalized by the rate of progress of the applications through the PTO, a matter over which the applicant does not have complete control," 937 F.2d at 593—a principle that Congress later codified, 35 U.S.C. § 154(b)(1).



The later-filed, later-issued, earlier-expiring '011 and '709 continuation patents do not establish any earlier exclusivity period extended by the '356 patent. Thus, there is no ODP violation that justifies shortening the patentee's exclusive rights in eluxadoline to 14 years, 8 months, and 20 days.

## II. THE DISTRICT COURT ERRED IN FINDING LACK OF WRITTEN DESCRIPTION

### A. Claim 26 Recites No Limitation Concerning Glidants

Claim 26 of the '516 patent is a narrow picture-type claim for a pharmaceutical tablet "comprising" specific amounts of eluxadoline, four excipients, and a film coating. Appx206. The district court erred, PBr. 48-51, by construing claim 26 as reciting a tablet "where a glidant is optional or not included," Appx26.

Sun defends this construction by arguing that a "comprising" claim that does not recite glidants is no different from a claim "that expressly states a glidant is 'optional.'" SBr. 42-43. That is false. An open-ended "comprising" claim does not recite compositions *without* a glidant. Instead, it claims only compositions *with* the enumerated limitations, *Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495, 501 (Fed. Cir. 1997), irrespective of what other ingredients or properties an infringing product may have. An applicant need only "describ[e] the invention, with all its claimed limitations," *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997), not "every conceivable and possible future embodiment of [an] invention," *Cordis Corp. v. Medtronic AVE, Inc.*, 339 F.3d 1352, 1365 (Fed. Cir. 2003).

This is not a blaze-marks case, as Sun contends, SBr. 44, nor one asking whether a large genus has written description support. Nor is it analogous to *ICU Medical, Inc. v. Alaris Medical Systems, Inc.*, 558 F.3d 1368 (Fed. Cir. 2009). SBr. 42. That case did not construe a "comprising" claim to require written description of unclaimed characteristics. Rather, *ICU Medical* construed a particular claim term ("needleless connector valve") to include both valves with spikes and "spikeless" valves having functional characteristics, and found no support for the latter in the specification. 558 F.3d at 1377-79. Here, both parties'

23

experts agreed that the specification disclosed all of claim 26's limitations, which ends the inquiry.  PBr. 7-8, 50-51.

Sun's waiver argument is baseless.  SBr. 42.  Neither party asked the district court to construe claim 26, each relying on its plain language.  And the parties agreed that claim 26, unlike other claims, did not recite optional glidants.  Appx5721, Appx5809, Appx5856, Appx16107-16108 n.2.  The district court's construction of claim 26 as being "glidant-optional" did not emerge until the order on review.  Plaintiffs have waived nothing.

### B.    The District Court Erred in Redefining the Invention to Have Functional Requirements Based on Extrinsic Evidence

The district court erred by requiring written-description support for the functional property of "sufficient flow characteristics" as allegedly "necessary" to the invention, even though flow is nowhere discussed in the intrinsic record.  *See* PBr. 51-55.  The court compounded its error by presuming that, "in instances where the flow is not sufficient, a glidant is necessary, not optional."  Appx20. The district court then flipped the written-description analysis on its head by finding that, because some embodiments include a glidant, glidants were necessary to achieve sufficient flow and thus were a required ingredient.  PBr. 52-55.[7]

---

[7] Contrary to the district court's finding, Dr. Berkland did not testify that none of the specification formulations is made without a glidant.  Appx16.  Instead, he

The district court's analysis has no support in the law.  Written description "requires an objective inquiry into the four corners of the specification."  *Alcon Rsch. Ltd. v. Barr Lab'ys, Inc.*, 745 F.3d 1180, 1191 (Fed. Cir. 2014).  Sun cannot point to a single case where a court relied on extrinsic evidence to redefine the "necessary" requirements of the invention.  Indeed, this Court has admonished that Section 112 does not "mandat[e] an inquiry into what an inventor considers to be essential to his invention and requir[e] that the claims incorporate those elements."  *Cooper Cameron Corp. v. Kvaerner Oilfield Prods., Inc.*, 291 F.3d 1317, 1323 (Fed. Cir. 2002).  Sun's attempt to limit *Cooper* to an analysis of "described embodiment[s]," SBr. 48, lacks merit.

Sun maintains that the district court merely "reli[ed] on expert testimony to determine how a POSA would understand the specification," as did Plaintiffs.  SBr. 45-46.  But expert testimony cannot substitute for the actual specification disclosure.  Sun cannot point to any specification passage or prosecution statement addressing "sufficient flow characteristics"—because none exists.  That certain preferred embodiments include glidants, SBr. 48, does not establish that glidants are necessary to the invention when nothing in the intrinsic evidence says so.

---

testified only that the Table 1 preferred embodiments have a glidant. Appx6142-6143.

*Cordis*, 339 F.3d at 1365 ("a claim need not be limited to a preferred embodiment"); PBr. 53-54. Indeed, the specification confirms that glidants are not necessary. *Infra* § II.C.

Sun relies on *ICU Medical*, but critically concedes that *ICU Medical* looks only to the specification in evaluating written-description support. SBr. 46. Sun declares the district court's ruling "consistent" with *ICU Medical* because of the court's erroneous conclusion that "'the specification fails to disclose a formulation that does not have a glidant or where a glidant would be understood as optional.'" SBr. 46 (citing Appx18). But Sun admits that this arises only from the district court's predicate finding that the claimed tablets require "sufficient flow properties," SBr. 47, which in turn is derived solely from evidence *outside* the specification, SBr. 40-41. *See* PBr. 51-55.

Sun next turns to *Tronzo v. Biomet, Inc.*, 156 F.3d 1154 (Fed. Cir. 1998), as "an analogous case" where "this Court credited expert testimony" about a patent's disclosure. SBr. 46. The issue in *Tronzo* was whether the original patent application supported a broad claim to hip cup implants of any shape. This Court found that it disclosed only "conical shaped cups." *Tronzo*, 156 F.3d at 1159. In doing so, the Court noted that the defendant's expert provided "relevant testimony" that an orthopedic surgeon would read the application to disclose only trapezoidal

26

cups, which, importantly, this Court deemed "consistent with [its] express language." *Id.* at 1160. *Tronzo* thus confirms that, while expert testimony can be relevant, it does not substitute for the specification itself.

The district court also flipped Sun's burden of proof by requiring Plaintiffs to prove that the specification affirmatively discloses that "a glidant is unimportant or just an optional component." Appx21; PBr. 58-59. Contrary to Sun's claim, SBr. 50, the court was not merely stating that Plaintiffs' counterarguments were unpersuasive, but instead was crafting a *de novo* legal requirement for Plaintiffs to meet. Furthermore, the district court's requirement that the specification must disclose formulations that "would have sufficient flow characteristics or *work without a glidant*," Appx26, has no place in written-description analysis. PBr. 59-60. This is not an isolated misuse of the word "work," SBr. 52, but a foundation of the district court's inquiry. Sun rejoins that "this Court has analyzed whether a POSA 'would have thought a formulation would work' in invalidating claims for lacking written description." SBr. 52 (quoting *Nuvo Pharms. (Ireland) Designated Activity Co. v. Dr. Reddy's Lab'ys Inc.*, 923 F.3d 1368, 1381 (Fed. Cir. 2019)). But the claims in *Nuvo* involved efficacy limitations, which are not present here. *Accord Novartis Pharm. Corp. v. Accord Healthcare, Inc.*, 21 F.4th 1362, 1371 (Fed. Cir. 2022) (distinguishing *Nuvo*); *Nuvo*, 923 F.3d at 1384 ("it is

27

unnecessary to prove that a claimed pharmaceutical compound actually achieves a certain result," unless "the inventor expressly claims that result").

Unable to defend the district court's analysis, Sun again claims waiver. SBr. 45. But waiver applies to issues, not arguments. If the issue was contested below, appellants "are not limited to the precise arguments they made below" and can "formulate[] any argument they like[] in support of that claim" on appeal. *Yee v. City of Escondido*, 503 U.S. 519, 534-35 (1992); *Pfizer, Inc. v. Lee*, 811 F.3d 466, 471 (Fed. Cir. 2016). Plaintiffs indisputably contested the issue of whether the claims could be invalidated if the court found no written description of formulations without glidants, including by arguing that (i) the intrinsic evidence defines the invention and (ii) the extrinsic evidence did not narrow the invention. Appx16114-16123. Finally, Sun (not Plaintiffs) bore the burden of proof, and Sun cannot convert Plaintiffs' responsive factual arguments into a waiver that forgives the inadequacy of Sun's written-description challenge.

### C.    Sun Has Not Shown That the Specification Fails to Disclose Formulations Without a Glidant

The specification explicitly discloses formulations without a glidant. For example, the Summary of Disclosure (which the district court referred to as "Background," Appx25) expressly states that the formulation can be comprised of eluxadoline and any of five excipients, only one of which is a glidant. PBr. 60.

The district court impermissibly discarded this as "a basic idea" because it was not a working example. Appx25-26. Contrary to Sun's claims, SBr. 53, "[t]here is no requirement that the disclosure contain either examples or an actual reduction to practice," *Alcon*, 745 F.3d at 1190-91. Regardless, Sun admitted below that this disclosure corresponds to "hundreds or thousands of formulations," Appx15611, only some of which would include a glidant, PBr. 60.[8]

Sun also cannot discount the disclosure of a preformulation composed of eluxadoline with one or more excipients, which need not include a glidant. PBr. 60-61. The solid preformulation composition is simply divided into tablets to achieve the requisite formulation weights, Appx194 (12:59-62), without the addition of any further excipients. Accordingly, contrary to Sun's contention, SBr. 56, when its expert admitted that this specification passage discloses that a glidant is optional, Appx5974-5975, he thereby admitted that glidants are optional *in the claimed tablet*.[9]

---

[8] Sun attempts to dismiss its admission as pertaining to "combinations," SBr. 54-55, but the disclosure at issue unambiguously relates to complete formulations.

[9] Plaintiffs did not concede a "homogenous" requirement is applicable to all claims. SBr. 55-56. Sun's cited support makes clear that this was limited to claims with "monophasic" requirements, which are not present in claim 26 of the '516 patent. *See* Appx5751.

Finally, Sun cannot escape that the '516 patent's original claims disclose formulations that do not require a glidant.  PBr. 61-62.  That the applicant later amended those claims to overcome an obviousness rejection—not based on a glidant, SBr. 57—does not detract from this disclosure.  And there is no waiver where, as here, the court *sua sponte* took judicial notice of the original patent, its patent application, and its content, Appx34 n.9, all of which are in the record.  *See Univ. of S. Fla. Rsch. Found., Inc. v. Fujifilm Med. Sys. U.S.A., Inc.*, 19 F.4th 1315, 1324 (Fed. Cir. 2021).

## III.  SUN'S "ALTERNATIVE GROUNDS" FOR AFFIRMING THE JUDGMENT ALL FAIL

### A.  The Inventor Testimony Sun Offers Is Immaterial and Mischaracterized

Sun claims that an inventor's testimony provides alternative grounds to affirm the written-description judgment.  As a preliminary matter, if this Court rules that the district court erred in construing claim 26 or in redefining the invention to require sufficient flow, inventor testimony is irrelevant.  So, too, if this Court finds that the specification or original claims disclose glidant-optional formulations.  Section 112 requires that "the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date."  *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010).  Importantly, inventor testimony

cannot contradict specification disclosures; it can only "illuminate" absent disclosures. *Nuvo*, 923 F.3d at 1381.

Sun blatantly misstates the testimony of Dr. Costello, one of four listed inventors. Appx5779-5780.[10] As a program director for eluxadoline development, he was involved in the "management and R&D decision-making of doing formulations." Appx5765, Appx5768-5769. His testimony primarily concerned the selection of a formulation for Phase 3 clinical trials in connection with manufacturing scale-up for commercialization. Appx5775-5782, Appx5785-5797. When Dr. Costello testified that formulations other than the Viberzi® commercial formulation were "unsuccessful ones," he meant that the other formulations "did not match all of the performance criteria we needed" in a commercial sense. Appx5798-5799.

Sun fails to disclose that Dr. Costello testified only that he could not "remember" making formulations without a glidant. Appx5799, Appx5788-5789, Appx5796-5798. In fact, he specifically testified that, while he did not recall such a formulation, "*[t]hat doesn't mean there were not*" such formulations. Appx5797. Dr. Costello signed the patent application disclosing formulations

---

[10] Sun did not seek discovery of the other inventors.

without glidants.  Appx5769-5770.  Sun cannot secure a written-description judgment based on Dr. Costello's lack of memory.

### B.    Sun's Unclean Hands Affirmative Defense Does Not Provide an Alternative Basis for Judgment

Finally, Sun alleges that, in granting Plaintiffs' motion for judgment on the pleadings on unclean hands, the district court committed procedural error by not applying a more liberal standard to its *affirmative defense* compared to its *counterclaim*.  SBr. 60-61.  Sun's arguments are baseless.  The district court applied the distinct standard for affirmative defenses, Appx16774-16775, and simply found the defense insufficient for the same reasons as the counterclaim, Appx16783-84.  Sun does not contest on the merits the district court's multiple reasons for entering judgment on both, Appx16777-16784, and indeed stipulated that it would not offer evidence for the unclean-hands defense it pled.[11]

Regardless, this Court cannot consider this argument because reversal of alleged procedural error does not supply alternative grounds for judgment.  An

---

[11] Sun stipulated that it would "not introduce evidence at trial to support an argument that Plaintiffs violated the Protective Order … or fraudulently used confidential information," Appx4089, which Sun pled as the basis for both its unclean-hands defense and counterclaim, Appx3542-3544, Appx3549-3552.  The district court found that the stipulation disposed of Sun's counterclaim/defense, and that Sun's attempt to recharacterize its unclean-hands theory failed for three independent reasons.  Appx16777-16783.

appellate court "may affirm on alternative grounds only when those grounds are dispositive, indisputable, and appear clearly in the record." *United States v. Schneider*, 594 F.3d 1219, 1227 (10th Cir. 2010).  This is not a case like *TypeRight Keyboard Corp. v. Microsoft Corp.*, where the appellee's motion for summary judgment of noninfringement below provided an alternative ground for affirmance, as resolving this issue in appellee's favor would have resulted in this Court "affirming the district court's judgment."  374 F.3d 1151, 1157 (Fed. Cir. 2004). Sun did not move for judgment against Plaintiffs on unclean hands.  Nor has Sun established a reason for remand, or even briefed the merits.  But even if this Court somehow *reversed* the district court without briefing, that would only restore the pled defense and permit discovery to proceed.

Because it cannot affirm the judgment on this ground, this Court should not consider the issue.  At best, Sun may appeal this order once a judgment of infringement is entered against it.

## **CONCLUSION**

This Court should reverse the judgment.  PBr. 63.

Respectfully submitted,

Lisa B. Pensabene                    /s/ Eric W. Dittmann
Hassen A. Sayeed                     Eric W. Dittmann
James Y. Li                          Melanie R. Rupert
O'MELVENY & MYERS LLP                Peter E. Conway
7 Times Square                       PAUL HASTINGS LLP
New York, NY 10036                   200 Park Avenue
(212) 326-2000                       New York, NY 10166
lpensabene@omm.com                   (212) 318-6000
hsayeed@omm.com                      ericdittmann@paulhastings.com
jli@omm.com                          melanierupert@paulhastings.com
                                     peterconway@paulhastings.com

                                     Stephen B. Kinnaird
                                     PAUL HASTINGS LLP
                                     2050 M Street, NW
                                     Washington, DC 20036
                                     (202) 551-1700
                                     stephenkinnaird@paulhastings.com

Dated:  February 20, 2024            *Counsel for Plaintiffs-Appellants*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Circuit Rule 32(b)(3) and Federal Rule of Appellate Procedure 32(g)(1), I hereby certify that the foregoing Reply Brief of Plaintiffs-Appellants complies with the type-volume limitations in Federal Circuit Rule 32(b)(1), because it contains 6,994 words, excluding the exempted parts under Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2).

I future certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because the brief was prepared using Microsoft Word 365 in 14-point Times New Roman font.

/s/ *Eric W. Dittmann*
Eric W. Dittmann

35

## <u>CERTIFICATE OF SERVICE</u>

I, Eric W. Dittmann, hereby certify that, on February 20, 2024, the foregoing document was filed using the Court's CM/ECF system and a copy served on the parties' counsel of record via ECF.

Date: February 20, 2024

/s/ *Eric W. Dittmann*
Eric W. Dittmann
PAUL HASTINGS LLP
200 Park Avenue
New York, NY 10166
(212) 318-6000
ericdittmann@paulhastings.com